537 F.2d 200
 In the Matter of the Complaint FLORIDA CANAL INDUSTRIES,
INC., for Exoneration from or Limitation of
Liability as Owner of the DIESEL TUG
W.A.B. Official Number 251285,
Plaintiff-Appellee,
v.
Charles RAMBO as Administrator of the Estates of Sonia R.
Hines, Deceased, et al., and Aetna Insurance
Company, Defendants-Appellants.
GULF OIL CORPORATION, for Exoneration from or Liability as
Owner of the BARGE PORT EVERGLADES, Plaintiff-Appellee,
v.
Charles RAMBO as Administrator of the Estates of Sonia R.
Hines, Deceased, et al., and Aetna Insurance
Company, Defendants-Appellants.
 No. 75-1139.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 19, 1976.
 
 Roger Vaughan, Tampa, Fla., Susan Goldman, Podhurst, Orseck & Parks, Robert Orseck, Miami, Fla., Clein & Clein, North Miami, Fla., for defendants-appellants.
 Dewey R. Villareal, Jr., Tampa, Fla., for Gulf Oil Corp.
 Brendan P. O'Sullivan, Tampa, Fla., for Fla. Canal Industries.
 Appeals from the United States District Court for the Middle District of Florida.
 Before GODBOLD, McCREE* and TJOFLAT, Circuit Judges.
 TJOFLAT, Circuit Judge:
 
 
 1
 Florida Canal Industries, Inc. (Florida) and Gulf Oil Corporation (Gulf) each filed a complaint for exoneration from or limitation of liability[1] with respect to the claims of James J. Hines, Jr., individually, and as administrator of the estate of Sonia R. Hines, arising out of an alleged collision between his cabin cruiser and the barge PORT EVERGLADES in Tampa Bay on the night of May 4, 1973. Gulf owned the PORT EVERGLADES. It was being towed by Florida's tug, the W.A.B. Hines died before trial, and the appellant, Rambo, was substituted as the administrator of the estates of both James and Sonia Hines. After a nonjury trial in the United States District Court for the Middle District of Florida, final judgment was entered relieving Florida and Gulf of all liability. On this appeal, the only issue presented is whether the trial court committed reversible error in refusing to admit into evidence a Coast Guard Report concerning the alleged collision. We conclude there was no error and affirm.
 
 
 2
 The evidence demonstrated that on May 4, 1973, the tug W.A.B. was en route to Tampa, Florida, from Ostrica, Louisiana, with the PORT EVERGLADES in tow. At approximately 8:30 P.M. it reached the entrance to Tampa Bay and proceeded to shorten the length of the towing hawser between its stern and the bow of the barge to approximately 300 feet. The tug then continued to tow the barge up Tampa Bay to the vicinity of the Skyway Bridge. The master of the tug, one Captain Ellison, was on watch in the wheel house, and he observed a number of small boats running around the bay. After midnight, upon reaching the bridge, Ellison observed a yacht make three or four circles in front of the tug and then pass by its starboard side. After passing the bridge, the tug pulled alongside the barge and maneuvered it to the Warren Petroleum Company Dock, where the barge was secured at about 3:00 A.M.
 
 
 3
 The evidence also established that at approximately 7:30 P.M. on the evening of May 4, before the tug reached Tampa Bay, the Hineses left Alafia Marina in their cabin cruiser. The boat never returned. Early the next morning James Hines was found clinging to a pier near the Skyway Bridge; his wife's body was later recovered. No evidence was admitted as to what caused the cruiser's disappearance or how Mrs. Hines drowned. The court concluded, therefore, that the cause of the loss of the yacht and Sonia Hines' death was unknown and that, in any event, Florida and Gulf were not negligent.
 
 
 4
 It is urged by appellant that the cause would have been established, i. e., the negligent operation of the tug, if the court had received the proffered Coast Guard report in evidence. The report was based on numerous interviews, including one with Mr. Hines, and it incorporated his written statement. The report and the statement both indicate that it was the Hines yacht that circled in front of the tug and then passed by on the starboard side. They further indicate that, after passing the tug, the yacht crossed between the tug and the barge and became snagged on the towline. It was then that the Hineses saw the barge bearing down on them, and they jumped overboard just before the yacht collided with the barge and sank. Hines' statement indicates that the barge had no lights on it, but the report states that there is no definite evidence to indicate that either the tug or the barge were not properly lit. The report concludes that the "casualty probably could have been prevented had James Hines been familiar with the Rules of the Road and/or operation of a tug towing a barge."
 
 
 5
 Appellant argues that the report should have been received under the exception to the hearsay rule provided by what was formerly subsection (a) of the Federal Business Records Act.[2] He relies on the fact that "upon receipt of information of a marine casualty or accident" the Coast Guard is required by law to make an investigation and file a report.[3] This requirement, it is suggested, indicates that the report was made in the regular course of Coast Guard business. That having been established, the report is said to be admissible even if its author had no personal knowledge of the incident reported.[4]
 
 
 6
 In reviewing these contentions we note at the outset that the trial court has broad discretion in determining the admissibility of documents under the business records exception, and its ruling will only be disturbed on a showing that this discretion has been abused. E. g., United States v. Middlebrooks, 431 F.2d 299, 302 (5th Cir. 1970), cert. denied, 400 U.S. 1009, 91 S.Ct. 569, 27 L.Ed.2d 622 (1971); United States v. Fendley, 522 F.2d 181, 184 (5th Cir. 1975). There was no abuse of discretion in this case.
 
 
 7
 Appellant's arguments reflect a misunderstanding of the business records statute. It states that "any writing or record . . . made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record . . ." (Emphasis added.) Here the Coast Guard report was clearly made in the regular course of the Coast Guard's investigation, and it would therefore be admissible if offered as proof that the acts of investigation which it records took place. But appellant did not seek to admit it as proof of those acts. Rather, he offered the report to prove how the accident which was the subject of the investigation occurred. There is nothing in the statute which would permit the admission of the report for that purpose.
 
 
 8
 Appellant seeks to avoid the issue by pointing to the fact that Hines' statement was incorporated in the report. While we agree with appellant that the statement is a first-hand description of the accident, it was not made by Hines in the regular course of his business. Obviously, the mere inclusion of Hines' statement in the report does not alter this fact. As the court said in United States v. Smith, 172 U.S.App.D.C. 297, 521 F.2d 957, 964 (1975):
 
 
 9
 . . . while (section 1732(a)) exempts the maker of the record from the requirement of personal knowledge, it allows admission of the hearsay only if it was reported to the maker, directly or through others, by one who is himself acting in the regular course of business, and who has personal knowledge.[5]
 
 
 10
 Similarly, in Sabatino v. Curtiss National Bank of Miami Springs,415 F.2d 632, 637 (5th Cir. 1969), cert. denied, 396 U.S. 1057, 90 S.Ct. 750, 24 L.Ed.2d 752 (1970), we stated that records are admissible under section 1732 if three conditions are met:
 
 
 11
 (1) the records must be kept pursuant to some routine procedure designed to assure their accuracy, (2) they must be created for motives that would tend to assure accuracy (preparation for litigation for example, is not such a motive), and (3) they must not themselves be mere culminations of hearsay or uninformed opinion.
 
 
 12
 The third condition is what the Coast Guard report in this case fails to satisfy. While the report was clearly made in the regular course of Coast Guard business, it was offered to prove the truth of the matters asserted in a hearsay statement made to the Coast Guard by a person not acting in the regular course of his business. Consequently, it was appropriately excluded by the district court.
 
 
 13
 AFFIRMED.
 
 
 
 *
 Of the Sixth Circuit, sitting by designation
 
 
 [1]
 46 U.S.C. §§ 181-185 (1958)
 
 
 [2]
 The trial was held in 1974 before the Federal Rules of Evidence were adopted and while the former version of the Federal Business Records Act was in effect. Subsection (a) of that statute read as follows:
 (a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry of a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.
 All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.
 The term "business," as used in this section, includes business, profession, occupation, and calling of every kind.
 28 U.S.C. § 1732 (1970), repealed Pub.L.No.595, § 2(b), 88 Stat. 1926, 1949 (1975). Citations to section 1732 in this opinion are to the former version quoted above.
 
 
 [3]
 46 C.F.R. § 4.07(a) (1974)
 
 
 [4]
 See the second paragraph of 28 U.S.C. § 1732(a) in note 2, supra
 
 
 [5]
 Accord, Standard Oil Co. v. Moore, 251 F.2d 188, 214 (6th Cir.), cert. denied, 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958):
 A memorandum or record cannot be considered as having been made in the "regular course" of business, within the meaning of § 1732, unless it was made by an authorized person, to record information known to him or supplied by another authorized person. The second paragraph of § 1732(a) expressly provides that the entrant or maker need not have personal knowledge of the matters recited in the memorandum or record. . . . But where the entrant or maker records information supplied by others, it must appear that "it was part of their regular course of business to report to him what the declarants themselves knew, as it was part of his business to record what they said." United States v. Grayson, 2 Cir., 166 F.2d 863, 869. Where the information comes to the entrant or maker from unauthorized persons, the memorandum or record is therefore inadmissible, not because it contains hearsay, but because it was not made in the regular course of business.