Dorothy L. ROCK, Individually and as Administratrix of the Estate of Richard D. Rock, and as the Natural Tutrix of the Minor Children, Stacy Lynn Rock, Sherry Rock Hukins, Herbert J. Rock, and Dorothy Julian Rock, Plaintiff–Appellant,

v.

HUFFCO GAS & OIL CO., INC. (Huffco Petroleum Corp.), and Dual Drilling Company, Defendants–Appellees.

No. 89–3776.

United States Court of Appeals, Fifth Circuit.

Jan. 31, 1991.

Isaac F. Hawkins, III, Robert H. Schmolke, Baton Rouge, La., for plaintiff-appellant.

Joel L. Borrello, Adams & Reese, New Orleans, La., for Huffco.

Jefferson R. Tillery, Edward J. Koehl, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Dual Drilling.

Before CLARK, Chief Judge, THORNBERRY, and HIGGINBOTHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

An employee for an offshore catering business brought this negligence suit for injuries allegedly suffered during his employment. The employee has died since the instigation of this litigation, and his family members have been substituted as plaintiffs for the purposes of continuing the action. Two of the defendants, Huffco Petroleum Corporation and Dual Drilling Company, filed a motion for summary judgment, which the district court granted. The court ruled that the evidence tendered by the plaintiffs constituted hearsay, which was not admissible under any of the exceptions to the hearsay rule. The plaintiffs appeal the district court's determination that none of the proffered evidence is admissible and its decision to grant the summary judgment.

Finding no error, we AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

This litigation stems from two accidents allegedly suffered by Richard D. Rock while employed as a steward/cook for Offshore Food Service, Inc. of Houma, Louisiana. Offshore Food Service provides food catering services to offshore drilling platforms and vessels in the Gulf of Mexico.

On July 13, 1987, Rock was assigned to work on the Huffco Fixed Platform 206A, which was located in the High Island Region off the coast of Galveston, Texas. On the morning following his arrival, as he was leaving his sleeping quarters, Rock claimed that his foot fell through a rusted part of a step located just outside of his doorway causing him to sprain his ankle. There were no witnesses to the accident, which occurred between 5:00 and 6:00 a.m. as Rock was making his way to the galley to prepare breakfast. Rock reported the incident to the chief supervisor on the platform at the time, Joe Lee Satsky. Satsky asked Rock if he wanted a doctor to examine the ankle, but Rock responded that he did not think the sprain was that bad and that he wanted to stay and work. Satsky did not prepare an accident report form.

The ankle continued to bother Rock over the next two days, and when shifts changed and a new chief supervisor came on board the platform, Rock again reported the incident. At this time, the new supervi-

sor, Donald Earl Christian, decided to complete an accident report form. The form was completed in both Rock's handwriting and Christian's handwriting. Among the statements written by Christian was a description of the accident. Christian wrote that Rock's "foot slipped to bad part of porch." Christian also investigated the site of the accident and confirmed the rusted condition of the step and the existence of a hole and noted that he had not seen the hole during previous inspections.

Christian then decided that Rock should consult a physician about the sprain and arranged to have Rock transported by helicopter to St. Mary's hospital in Galveston, Texas. Doctors reported that Rock had a tender and swollen right ankle and described the injury as a moderate sprain. The ankle was placed in a six inch plaster splint, and Rock was instructed not to put any weight on the ankle, to walk with crutches, and to elevate the ankle when possible.

On July 21, 1987, after a few days of rest, Rock returned to work. Rock worked on three different assignments before arriving on a jack-up rig owned by the Dual Drilling Company (Dual Rig No. 41) on August 26, 1987. Within hours of arriving on the drilling rig, Rock claimed to have re-injured his ankle by slipping in some grease on the floor of the rig's galley. The only potential witness to the accident was Barry Breaux, another Offshore Food's employee assigned to work with Rock. During his deposition, Breaux reported that he was in the galley at the time of the accident but did not see Rock fall. In fact, Breaux claims that Rock had previously advised him of a plan to fake such an accident. For his cooperation in remaining silent, Rock promised Breaux that he would report back to Offshore Food that Breaux was a "good worker."

Another Offshore Food's employee, Carl Trahan, was friendly with Rock and corroborated Breaux's story. Trahan was not on board the Dual 41 when the accident happened, but Trahan claims that Rock later told him that he had a bad ankle and had staged a slip-and-fall accident: "he told me that he was going to keep on walking on it and make sure it stayed swollen so he could get some money out of it." Record, Vol. 4 at 1134–35.

Following the alleged re-injury on the Dual 41, the foreman on board, John Gardner, filed an accident report with information provided to him by Rock. In the space provided for a description of the accident, Gardner wrote that Rock had "stepped in greasey [sic] spot on floor and slipped and twisted right ankle." Record, Vol. 4 at 1275. Gardner also questioned Breaux about the accident, but Breaux said nothing about the accident being staged.

Rock was treated for a sprained ankle on the day following the alleged accident on the Dual 41. Rock continued working on various offshore vessels in the Gulf of Mexico after the alleged incident and eventually obtained a light-duty job in the Offshore Food's office in Houma, Louisiana. Rock finally quit working for Offshore Food altogether on April 18, 1988.

Because of his ankle's worsening condition, Rock consulted Dr. A. Delmar Walker on September 17th and 27th of 1987. As part of those examinations, Rock provided the doctor with a history of the injury to his ankle including a description of the two incidents discussed above. On October 1, 1987, Dr. Walker referred Rock to a vascular surgeon, Dr. Fritz J. Rau, who again asked Rock for a history of the injury to his ankle. These medical histories are contained in office notes and medical reports.

Apparently, as a result of the injury to his ankle, Rock was suffering from a condition known as venous insufficiency. This occurs when the veins in the lower legs fail to return blood to the torso. Several surgeries were performed on Rock in an attempt to restore normal blood flow, but his condition deteriorated. In addition to his vascular condition, Rock developed infections, possibly resulting from the surgical procedures themselves. Rock died from a heart attack on December 12, 1988.

Rock initially brought a Jones Act claim on July 13, 1988, naming Huffco, Dual, Offshore Food, and Ogden Allied Leisure Services as defendants. The claim was dismissed, however, because Rock was employed primarily on stationary platforms and not vessels. After Rock's death, surviving members of his family substituted themselves as plaintiffs and pursued negligence claims against the defendants.

Arguing that the plaintiffs produced no evidence to show that Rock had injured himself on their rig, Dual filed a motion for summary judgment on April 25, 1989. Huffco and their insurer, National Union Fire Insurance Company, filed their own motion for summary judgment on June 27, 1989. The district court ordered both parties to tender the actual testimony and documentary evidence, which each intended to use at trial, including the evidentiary basis for admissibility of all such evidence. On October 5, 1989, the court entered judgment in favor of the defendants, and dismissed Rock's complaint. Specifically, the court concluded that the evidence offered by plaintiffs constituted hearsay, which did not fall within any of the recognized exceptions to the hearsay rule:

> Hearsay testimony admitted pursuant to the residual hearsay exceptions set forth in Federal Rules of Evidence 803(24) and 804(b)(5) must possess "circumstantial guarantees of trustworthiness" which the statements that Plaintiffs seek to introduce simply do not possess. Additionally, the court rejects Plaintiffs' contentions that certain statements should be admissible as statements against interest and that certain other statements should be admissible as statements made for the purposes of medical diagnosis or treatment.

*Rock v. Huffco*, No. 88–2998, slip op. at 3 (E.D.La. Oct. 5, 1989).

The plaintiffs now appeal the district court's evidentiary rulings and seek reversal of the court's order granting summary judgment for the defendants.

## II. DISCUSSION

### A. *Inadmissibility of Hearsay*

██ District courts are given broad discretion in rulings on the admissibility of evidence; we will reverse an evidentiary ruling only when the district court has clearly abused this discretion and "a substantial right of [a] party is affected." *See Muzyka v. Remington Arms Co., Inc.*, 774 F.2d 1309, 1313 (5th Cir.1985); *McNeese v. Reading and Bates Drilling Co.*, 749 F.2d 270, 275 (5th Cir.1985); Fed.R.Evid. 103(a). Applying this standard, we analyze, in turn, each of the district court's evidentiary determinations.

#### 1. Statements to Physicians

Appellants first suggest that written and testimonial evidence concerning the history of Rock's alleged accidents, which were given by Rock to the doctors treating his ankle, should be admissible under Federal Rule of Evidence 803(4). This rule provides that otherwise inadmissible hearsay should not be excluded if the statement was initially "made for purposes of medical diagnosis or treatment and describ[es] medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as *reasonably pertinent to diagnosis or treatment.*" Fed.R.Evid. 803(4) (emphasis added).

██ Admissibility of a statement made to one's physician turns on the guarantee of the absent declarant's trustworthiness. *See* Fed.R.Evid. 803(4) advisory committee's note. Therefore, before admitting such hearsay statements, the court should determine whether the statements were reasonably considered by the declarant as being pertinent to the diagnosis or treatment sought. Details of the injury not necessary for treatment but serving only to suggest fault "would not ordinarily qualify" as an exception to the hearsay rule under Rule 803(4). *See id.* A case cited by plaintiffs, *Ramrattan v. Burger King Corp.*, 656 F.Supp. 522 (D.Md.1987), illustrates the application of this rule. In *Ramrattan*, the district court held that a statement made to a physician that the defen-

dant's car struck his vehicle was admissible under Rule 803(4), but that "statements concerning who ran the red light or the fault of the parties are not pertinent to diagnosis or treatment." *Id.* at 530.

The plaintiffs argue that Drs. Walker and Rau considered the cause of Rock's injury pertinent to their diagnosis, however, deposition transcripts do not bear this out. For instance, Dr. Walker explained that "what caused [Rock] to fall is important from [a legal] standpoint but certainly not from a medical treatment standpoint." Record Vol. 4, at 1258. Although Dr. Rau was not as explicit, his comments suggest that the history of Rock's injury was pertinent only to the extent that he was aware that Rock's foot had, at some point, sustained an injury caused by a trauma to his ankle:

Q: [I]s it significant that he fell through a steel plate as opposed to a wooden porch, as opposed to a hole in the log or anything like that?
[Rau]: No. I'd have to say no to that.

.   .   .   .   .

Q: So what you were looking for is that something happened that could explain the condition that he had?
[Rau]: That's correct.
Q: And the fact that he fell—he stated he fell through a steel plate really was not—those words and that description was not significant as far as your treatment and diagnosis was concerned?
[Rau]: That's correct, other than it does sort of give you a general idea of what the injury was.

Record, Vol. 4 at 1161. The doctors stated that they only needed to know that Rock had twisted his ankle; they did not need to know the additional detail that Rock may have twisted the ankle while stepping through a rusted-out or defective step or by slipping in some grease in order to diagnose or treat Rock's injury.

The plaintiffs cite two additional cases that they claim support the admissibility of Rock's statements to his physicians. *See United States v. Renville*, 779 F.2d 430 (8th Cir.1985) and *United States v. Iron*

*Shell*, 633 F.2d 77 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). In both cases the Eighth Circuit applied a more liberal interpretation of the Rule 803(4) exception to the hearsay rule; however, both cases dealt with statements made by victims of child abuse to their treating physicians. In *Renville*, the court explained why statements, which ordinarily may not be admitted under Rule 803(4), may be admitted in a child abuse case: physicians must consider not only the physical harm involved but also the psychological and emotional injuries that accompany the crime of child abuse. *See Renville* 779 F.2d at 437. Statements of fault may dictate the extent of the psychological injury and suggest the appropriate treatment. *See id.* Rock's statements would not qualify under this broader application of the Rule 803(4) exception.

For the foregoing reasons, the district court was correct in ruling Rock's statements to his doctors as inadmissible under Federal Rule of Evidence 803(4).

### 2. Medical Records as Business Records

Plaintiffs next claim that the statements made by Rock to his physicians, which are contained in his medical records, should be admissible under the Business Records exception to the hearsay rule, Rule 803(6). The rule provides that the following records are not excluded by the hearsay rule:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

■ Defendants correctly point out that plaintiffs have committed a fatal flaw in their analysis. The business records exception to the hearsay rule applies only if the person who makes the statement "is himself acting in the regular course of business." *Florida Canal Industries, Inc. v. Rambo*, 537 F.2d 200, 202 (5th Cir.1976). In *Rambo*, a Coast Guard report containing a statement by a yacht owner as to the causation of a marine accident was offered to prove the truth of the statement. The court held that

> [w]hile the report was clearly made in the regular course of Coast Guard business, it was offered to prove the truth of the matters asserted in a hearsay statement made to the Coast Guard by a person not acting in the regular course of his business. Consequently, it was appropriately excluded by the district court.

*Rambo*, 537 F.2d at 203.

■ The justification for the business records exception rests on the assumption that business records are reliable because they are created on a day-to-day basis and "[t]he very regularity and continuity of the records are calculated to train the record-keeper in habits of precision." *McCormick on Evidence* § 306 at 872 (3rd ed. 1984). This assumption of reliability, accuracy and trustworthiness, however, collapses when "any person in the process is not acting in the regular course of the business." *Id.* § 310 at 879. Since Rock was not acting in the usual course of his business, the district court was correct in finding the medical records inadmissible under the business records exception to the hearsay rule.

### 3. Accident Reports and Logs

The plaintiffs next claim that a variety of reports and logs documenting Rock's alleged injuries are admissible to explain the circumstances of each of the alleged accidents. These writings consist of the following documents: 1) Christian's accident report for Huffco, 2) Gardner's accident report for Dual, 3) the ship's log on the Dual rig, 4) an accident report filed by Rock for Offshore Food (regarding the Dual accident), 5) a notice from Offshore Food to its insurer (regarding the Dual accident), and 6) a drilling report form (regarding the Dual accident). The plaintiffs first argue that the information contained in these reports is admissible under various Rule 803 hearsay exceptions. Second, the plaintiffs argue that certain statements found in the documents represent admissions by a party-opponent under Rule 801(d)(2) and, therefore, cannot be restricted by the hearsay rule. Each of these arguments is considered below.

#### a. The Rule 803 Exceptions

■ The plaintiffs begin by arguing that since these documents were filed in the normal course of business, they should qualify under the business records exception to the hearsay rule, Federal Rule of Evidence 803(6). As explained above in section (2), each participant in the making of the record must be acting in his normal course of business before the record becomes admissible under the Rule 803(6) exception. *See Rambo*, 537 F.2d at 203; *McCormick on Evidence, supra*, at 872. Since filing accident reports was not an integral part of Rock's usual course of business, it was within the district court's discretion to hold the documents as inadmissible under Rule 803(6). *See McCormick on Evidence, supra*, § 308 at 876–77 and n. 25 (distinguishing between accident report forms and records kept in the regular course of business).

■ The plaintiffs next argue that Rock's statements to Christian, describing his pain and difficulty in walking, would be admissible under Rule 803(3) as statements evidencing Rock's state of mind at the time the statements were made. "However, it is clear that before a statement, otherwise hearsay, can be admitted under 803(3) to show the declarant's then existing state of mind, the declarant's state of mind must be a relevant issue in the case." *Prather v. Prather*, 650 F.2d 88, 90 (5th Cir. Unit A July 1981). Since Rock's state of mind is not at issue in this case, the statement may not be admitted under this exception.

■ Plaintiffs next argue that the accident reports may be admissible as recorded recollections under Rule 803(5). This rule allows the introduction of documents, in lieu of live testimony, "concerning a matter about which a witness once had knowledge but now has insufficient recollection." Plaintiffs reason that the reports would be admissible under the rule should Gardner or Christian (makers of the accident reports) fail to remember each of the facts conveyed to them by Rock when they completed the reports. This exception to the hearsay rule, however, applies only to potential witnesses who, at one time, had firsthand knowledge of the facts that are sought to be admitted. *See, e.g.,* Fed.R. Evid. 803 advisory committee's note ("In a hearsay situation, the declarant is, of course, a witness, and neither this rule nor Rule 804 dispenses with the requirement of firsthand knowledge."); Fed.R.Evid. 602 advisory committee's note (witness may not testify "to subject matter of [a] hearsay statement, as he has no personal knowledge of it."); *Elizarraras v. Bank of El Paso,* 631 F.2d 366, 373–74 (5th Cir.1980) (applying Fed.R.Evid. 602).

■ The recordation of Rock's statement by Gardner and Christian are classic examples of hearsay within hearsay. To be admissible, both levels of hearsay must come within exceptions to the hearsay rule. *See* Fed.R.Evid. 805; *Weinstein's Evidence,* § 803(5)[01] at 803–162 to 163 (1988). Rock's statements cannot fit within the framework of the hearsay exceptions. Evidence of Rock's motive to fabricate such statements creates too great a risk of inaccuracy or untrustworthiness to provide the circumstantial guarantees of trustworthiness contemplated by the hearsay exceptions. *See* Fed.R.Evid. 803 advisory committee notes. The district court committed no error in ruling the reports inadmissible under Rule 803(5).

■ Plaintiffs next argue that Rock's statements, as recorded by Christian and Gardner, should be admissible under Federal Rule of Evidence 803(1) as present sense impressions. Rule 803(1) provides that hearsay statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" should be admissible regardless of the availability of the declarant. The justification for this hearsay exception relies on the contemporaneousness of the event under consideration and the statement describing that event. Because the two occur almost simultaneously, there is almost no "likelihood of [a] deliberate or conscious misrepresentation." Fed.R.Evid. 803(1) advisory committee's note; *see also United States v. Peacock,* 654 F.2d 339, 350 (5th Cir. Aug. 1981), *modified on other grounds,* 686 F.2d 356 (5th Cir. Unit B 1982) (statement, otherwise hearsay, admitted under Rule 803(1), because "[t]here was no time for [declarant] to consciously manipulate the truth").

■ The accident reports filed by Christian and Gardner do not fit within the limits established by Rule 803(1). Christian's report, for instance, was not filed immediately following Rock's alleged accident, but only after two days had passed. Rock also had time to "consciously manipulate the truth" prior to providing Gardner with information included in the second report; indeed, there is evidence to suggest that Rock never had such an accident but that he staged such an event for personal gain. The court did not abuse its discretion in finding this evidence inadmissible under Rule 803(1).

■ The overarching theory for the Rule 803 exceptions is that, under certain circumstances, a statement, although it is hearsay, may still possess circumstantial guarantees of trustworthiness sufficient to justify its admission as evidence. *See* Fed. R.Evid. 803 advisory committee notes. The district court committed no abuse of discretion in determining that the accident reports and logs did not provide the "circumstantial guarantees of trustworthiness" contemplated by this rule.

The plaintiffs argue that in reaching such a conclusion the district court made

an improper inquiry into Rock's credibility. However, the plaintiffs have misconstrued the district court's order. The court stated only that the proffered evidence did not meet the circumstantial guarantee of trustworthiness on which each of the exceptions is founded; the court made no determination as to the extent of evidence indicating that Rock, himself, was untrustworthy. The district court committed no error in finding these documents inadmissible under the Rule 803 hearsay exceptions.

### b. Rule 801(d)(2)—Admission By Party–Opponent

■ The plaintiffs next claim that the accident reports filed by the defendants are not hearsay, because they represent admissions by party-opponents. Rule 801(d)(2) notes that a statement is not hearsay if "[t]he statement is offered against a party and is ... (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." The plaintiffs argue that certain portions of the accident reports cannot be considered hearsay, because they represent admissions by employees of the defendants, and the admissions were made while the employees were acting within the scope of their employment. As an example, plaintiffs cite to the comment written by Huffco's chief supervisor, Christian, that Rock's "foot slipped to bad part of porch." Similar statements concerning the cause of the alleged accidents are included in Gardner's accident report for Dual, as well as other reports whose information was derived from these two accident reports.

The statements to which the plaintiffs have directed our attention cannot be properly characterized as admissions. It is obvious from the depositions of Christian and Gardner that they were simply documenting Rock's account of the alleged accidents. Nothing in the accident reports, themselves, indicates that the defendants adopted the version of the facts as reported by Rock.

The district court was correct in finding the accident reports inadmissible under Rule 801(d)(2).

### 4. Statements to Family Members

The plaintiffs next claim that statements made by Rock to his family concerning the circumstances of his alleged accidents should be admissible under the residual hearsay exceptions, Rules 803(24) and 804(b)(5). The text of both rules is identical; they would provide for the admissibility of

[a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

The district court held that the circumstances of the alleged accidents, as reported by Rock to his family, lacked the "circumstantial guarantees of trustworthiness" contemplated by these two rules. Since the language and purpose of the residual hearsay exceptions are identical, a discussion concerning one of the exceptions is just as applicable to the other. *See* J. Moore 11 Moore's Federal Practice § 803(24)[7] (2d ed. 1989).

■ We apply a highly deferential standard of review in evaluating the district court's determination on this issue. We will not reverse the district court's finding "absent a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors." *Page v. Barko Hydraulics*, 673 F.2d 134, 140 (5th Cir.1982); *see also Nowell v. Universal Elec. Co.*, 792 F.2d 1310, 1315 (5th Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986) (noting that "the residual exception must be used sparingly," and

recognizing "that a district court has considerable discretion in applying [it]").

■ Plaintiffs argue that our opinion in *Nowell* supports their argument for admissibility of Rock's statements to members of his family. Although we affirmed a district court's determination to allow the admission of such evidence in *Nowell*, we did so by relying on the "clear error of judgment standard" enunciated in *Page*, 673 F.2d at 140. In reaching that conclusion, we quoted the following passage from *Page*:

> In our opinion it would have been a more precise application of Rule 803(24), and would have best served the interests of justice, Rule 803(24)(C), to exclude the offered statement. However, our standard of review requires more than a judgment that we would have ruled differently and so we decline to hold that the statement's admission was reversible error.

*Nowell*, 792 F.2d at 1315 (quoting *Page*, 673 F.2d at 140). Our holding in *Nowell* did not provide that statements made to family members, in situations similar to Rock's, should always be admissible under the residual hearsay exceptions. On the contrary, we held that the exception must be used sparingly in such cases and that the district court's determination regarding that issue (whatever the outcome) must be given much deference on review. *See* 792 F.2d at 1315. Plaintiffs' reliance on *Nowell* is further undermined by our statement in *Nowell* that the district court would be free on remand to reconsider its determination with respect to the admissibility of the statements should the issue recur at retrial. *See id.*

The plaintiffs are seeking to admit hearsay testimony by family members of a deceased man concerning statements made prior to his death in order to establish the cause of his injury. Such statements are inherently unreliable. The arguments advanced by plaintiffs for admissibility of these statements fail to leave us with "a definite and firm conviction that the [district] court made a clear error of judgment in weighing the relevant factors." *Id.* (citing *Page*, 673 F.2d at 140). Other cases cited by plaintiffs can be distinguished.[1]

For the foregoing reasons, we affirm the district court's ruling that the statements made to family members would be inadmissible.

### 5. Insurance Adjuster's Statement

Finally, plaintiffs claim that a written statement taken from Rock by James Vanderlick, an insurance claims agent, acting on behalf of Dual Drilling Company, should be admitted either under Rule 804(b)(3) as a statement against Rock's own interest, or under the residual exceptions, Rules 803(24) and 804(b)(5). Although the statement is not notarized, it resembles an affidavit in its form.

#### a. Statement Against Interest

■ In the course of answering questions posed by Vanderlick, the plaintiffs argue that Rock made certain statements that were against his pecuniary interest. The one example cited by the plaintiffs is Rock's admission that he was still able to work despite his injury. Even if the plaintiffs were to prevail on this argument, they would only succeed in admitting those parts of the written statement that are contrary to their case. This exception would admit no evidence which could withstand the defendants' motion for summary judgment. Plaintiffs alternatively argue that such an admission would "buttress the trustworthiness" of the entire statement that Rock provided Vanderlick. A patchwork of admissions, however, cannot provide the circumstantial guarantees of trustworthiness necessary to admit the complete statement. The statement itself must be made under such circumstances as to provide the court with a high degree of confi-

---

1. *See Huff v. White Motor Corp.*, 609 F.2d 286, 292 (7th Cir.1979) (the admitted statements were contrary to decedent's pecuniary interest and decedent had no reason to invent the facts described); *Elmer v. Tenneco Resins, Inc.*, 698 F.Supp. 535, 545 & n. 6 (D.Del.1988) (decedent's statements were "likely to be admissible under a combination of [Federal Rules] 803(6) and 803(4)" but final evidentiary ruling was deferred).

dence that the statement is free from the risk of inaccuracy and untrustworthiness and that an opportunity for cross-examination would be superfluous. *See* 5 *Wigmore on Evidence* § 1420 (J. Chadbourn rev. 1974). Rock most likely realized that the statement would be used in any forthcoming litigation, and evidence suggests that Rock had a motive to fabricate such a statement; these facts would create a risk of untrustworthiness that would undercut any security we might be able to wring from admissions found within the statement.

### b. Residual Exception

■ All the reasons militating against reversal of the district court's determinations discussed above in sections (4) and (5)(a) apply with equal force here. Rock's self-serving statement simply cannot provide the "circumstantial guarantees of trustworthiness" required by the residual hearsay exceptions.

The plaintiffs urge us to apply various cases, which they argue have admitted similar statements under the residual hearsay exceptions. Each of these cases can be distinguished from the case before us.[2]

Given the standard this court must adhere to in reviewing the evidentiary findings of the district court, the exclusion of Rock's statement to Vanderlick should be affirmed.

### B. Summary Judgment

This court applies a de novo standard in reviewing a district court's decision to grant summary judgment. *See Amoco Prod. Co. v. Lujan,* 877 F.2d 1243, 1248 (5th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989). To avoid summary judgment, the plaintiffs must produce admissible evidence that will create a factual issue concerning the existence of every essential component of their case. *See In re Lewisville Properties,* 849 F.2d 946, 950 (5th Cir.1988). The plaintiffs have failed to meet this test.

■ Every item of material evidence proffered by plaintiffs has been excluded by the rule against hearsay. The remaining evidence consists primarily of Christian's observation that Rock had a swollen ankle, and evidence showing the physical condition of the rigs during the time of the alleged accidents. On such sparse evidence, the district court properly granted defendants' motions for summary judgment. *Cf. Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1987) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to defeat summary judgment].").

AFFIRMED.

---

2. *See United States v. Cree,* 778 F.2d 474 (8th Cir.1985) (liberal construction allowed for young victims of child abuse); *Herdman v. Smith,* 707 F.2d 839, 842 (5th Cir.1983) (statements admitted were those of a witness who risked criminal sanctions in coming forward with information); *Robinson v. Shapiro,* 646 F.2d 734, 743 (2d Cir.1981) (statement made *prior* to accident and no motive to fabricate statement); *United States v. Johnson,* 529 F.2d 581, 584 (8th Cir.), *cert. denied,* 426 U.S. 909, 96 S.Ct. 2233, 48 L.Ed.2d 835 (1976) (statement was not hearsay, but an admission by a party-opponent); *Corrigan v. United States,* 609 F.Supp. 720, 727 n. 3 (E.D.Va.1985), *reversed on other grounds,* 815 F.2d 954 (4th Cir.), *cert. denied,* 484 U.S. 926, 108 S.Ct. 290, 98 L.Ed.2d 250 (1987) (statement was not hearsay, but an admission by a party-opponent); *Turbyfill v. International Harvester Co.,* 486 F.Supp. 232, 234 (E.D.Mich.1980) (independent circumstantial guarantees of trustworthiness were provided).