# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-01-00176-CR
## NO. 03-01-00177-CR

---

**James Gibson Moore, III, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
NOS. 00-187-K26 & 00-188-K26,
HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING**

---

===========================
## CONCURRING OPINION
===========================

After examining the record, I would conclude that, but for appellant's testimony vouching for his daughters' credibility and substantiating the acts underlying his convictions, introduction of his daughters' statements through their therapist would constitute reversible error. Because I agree that the admission of improper hearsay evidence at trial was harmless, I join the Court's opinion. I write separately to address the admissibility of such statements under the medical treatment exception to the hearsay rule.

## ADDITIONAL BACKGROUND

The State indicted appellant in two separate causes, alleging sexual offenses against his two daughters. Cause one, relating to incidents with appellant's youngest daughter ("Jane"),[1] consisted of two counts of indecency with a child by contact. Cause two, relating to incidents with appellant's eldest daughter ("Mary"),[2] consisted of three counts of aggravated sexual assault of a child by contact and three counts of indecency with a child by contact.

The girls made their first allegations of abuse to their school counselor in late January 2000. One of Jane's peers, during a session prompted by the suicide of another student, advised the counselor that she should talk with Jane regarding "[s]omething about her father." The counselor then contacted Jane, who stated that her father had touched her inappropriately. Based upon this information, the counselor contacted Mary, who stated she too had been sexually abused. The school counselor then contacted Child Protective Services and the girls' mother. Both girls subsequently provided written statements to the police.

Approximately three weeks after reporting the sexual abuse to their school counselor and the police, the girls began seeing a therapist, Judy Cardinale. The initial session consisted of the girls' mother recounting their allegations of sexual abuse; the girls "stayed in the room to make sure she got it right." Cardinale testified generally that (i) the mother's statements, and those made by the girls "[a]t other times during therapy," were made for the purposes of diagnosing and treating the

---

[1] "Jane" (a pseudonym) was eleven years old when the allegations arose and twelve years old at the time of trial.

[2] "Mary" (a pseudonym) was thirteen years old when the allegations arose and fourteen years old at the time of trial.

2

girls and (ii) she impressed upon the girls "the need for them to be honest and truthful about what had occurred." During the course of more than forty sessions over a period of a year, in individual and group therapy, the girls revealed incidents of abuse. Cardinale stated that she did not investigate the veracity of the facts communicated to her by the girls.

**DISCUSSION**

Appellant challenges the trial court's ruling permitting Cardinale to repeat statements made to her by his daughters during their year-long course of therapy. Appellant does not challenge Cardinale's qualifications as an expert witness; rather, appellant contends that the trial court erred in admitting hearsay evidence by permitting the girls' therapist to testify concerning their out-of-court statements detailing incidents of sexual abuse. *See* Tex. R. Evid. 803(4). The State responds that the district court properly permitted Cardinale to repeat the statements made by Mary and Jane because they were made for purposes of medical treatment or diagnosis. *See id.*[3]

A trial court's determination as to the admissibility of evidence is reviewed under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 100-02 (Tex. Crim. App. 1996); *Kelly v. State*, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992). Where the State seeks to introduce testimony, it bears the burden of establishing the admissibility of such evidence. *See Kelly*, 824 S.W.2d at 573. With regard to hearsay then, the proponent of hearsay evidence must point to a

---

[3] Courts have been willing to construe the exceptions to the rule against hearsay broadly to permit out-of-court statements of alleged victims of child abuse to be admitted into evidence as excited utterances, statements for purposes of medical treatment, or under the residual exception of the hearsay rule. Because the State does not contend that the statements were admissible under any other evidentiary rule, we address only its contentions regarding rule 803(4).

hearsay exception before such testimony will be admitted. *See, e.g.*, *A.F. Conner & Sons, Inc. v. Tri-County Water Supply Corp.*, 561 S.W.2d 466, 471 (Tex. 1978). Thus, the burden is on the proponent of the hearsay statement to establish its admissibility.

### *Admission of Evidence*

Although we must be sensitive to the difficulties involved in prosecuting cases involving child abuse, we "cannot alter evidentiary rules merely because litigants might prefer different rules in a particular class of cases." *Tome v. United States*, 513 U.S. 150, 165 (1995) (quoting *United States v. Salerno*, 505 U.S. 317, 322 (1992)). The rule against hearsay is a rule of exclusion. Courts have long recognized exceptions to that exclusion when the exceptions are tailored to allow the introduction of evidence that is likely to be trustworthy. Undergirding these exceptions is a delicate balancing of the interests in barring unreliable evidence with admitting trustworthy evidence. Common to the various hearsay exceptions is the notion that certain circumstances attendant to the out-of-court statement provide sufficient guarantees of the statement's trustworthiness, thus rendering unnecessary the normal judicial assurances of trustworthiness secured by cross-examination and the oath. 5 *Wigmore on Evidence* §§ 1420, 1422 (3d ed. 1940). In this regard, Dean Wigmore observed that

> the purpose and reason of the Hearsay rule is the key to the Exceptions to it. The theory of the Hearsay rule . . . is that many possible sources of inaccuracy and untrustworthiness which may lie underneath the bare untested assertions of a witness can be brought to light and exposed, if they exist, by [the] test of cross examination. But this test or security may in a given instance be superfluous; it may be sufficiently clear, in that instance, that the statement offered is free enough from the risk of inaccuracy and untrustworthiness, so that the test of cross-examination would be a work of supererogation.

4

*Id.* § 1420.

So it is with the medical diagnosis and treatment exception. Texas Rule of Evidence 803(4) excepts from the general hearsay rule statements made for purposes of medical diagnosis or medical treatment. *See* Tex. R. Evid. 803(4). Statements made for the purposes of medical diagnosis must describe "medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof." *Id.*[4] The two-part test for admitting these out-of-court statements is: (1) the declarant must make the statement for the purpose of receiving medical treatment, and (2) "the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985); *see also Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 277 (5th Cir. 1991). Thus, the declarant must first have a motive consistent with obtaining medical care, knowing that proper diagnosis or treatment depends upon the veracity of such statements. *White v. Illinois*, 502 U.S. 346, 356 (1992) ("[A] statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility."); *United States v. Iron Shell*, 633 F.2d 77, 83-84 (8th Cir. 1980).[5] And, the statement must be reasonably pertinent, *i.e.*, necessary and proper, to diagnosis and treatment. By satisfying these requirements, the out-of-court statement is deemed to be reliable.

---

[4] Most relevant to psychological and physical trauma inherent in child abuse cases is the portion of the rule requiring that statements relate to the "inception or general character" of the injury's cause. *See Macias v. State*, 776 S.W.2d 255, 259 (Tex. App.—San Antonio 1989, no writ).

[5] Texas rule 803(4) is based on and identical to the federal rule; therefore, federal case law is persuasive authority for interpreting and understanding the Texas rule. *See Fleming v. State*, 819 S.W.2d 237, 247 (Tex. App.—Austin 1991, pet. ref'd).

By way of example,[6] a person's statement, "I was hit by a car," made for the purposes of receiving medical treatment, would come within the exception. This is so because it is presumed that the declarant, motivated by the desire to receive accurate medical treatment, is aware that the truthfulness of his statement directly impacts the doctor's ability to diagnose and treat his injuries. Unless there is some evidence indicating that the declarant appreciates the potential harmful consequences of making false statements, the assumption of trustworthiness upon which this exception rests does not exist. *See Gohring v. State*, 967 S.W.2d 459, 462 (Tex. App.—Beaumont 1998, no pet.). In contrast, a person's statement, "I was hit by the car which went through the red light," would not come within the exception; it is inconsequential and irrelevant to medical treatment to know that the car went through the red light. Details of the injury's cause not necessary for treatment do not qualify as an exception under rule 803(4). *Huffco Gas & Oil Co.*, 922 F.2d at 277. Although the two-part reliability test may be more difficult to apply in instances of child sexual abuse, it nevertheless pertains.

At trial, the State elicited from Cardinale out-of-court statements made to her at unspecified times by the girls during the year-long course of therapy. On direct examination, Cardinale testified:

> [Mary] told me that she recalled that she had been abused from when she was about five or six years old. Two incidents that she remembered happened when she was relatively young were one in a bathtub, one in a shower, where her father made her touch his penis. She told me that the abuse went on at least once every time that she visited her father, sometimes more than that. She was at that time living with her—well, part of the time she lived with her father and part of the time she lived with

---

[6] This example comes from the advisory committee's note to Federal Rule of Evidence 803(4).

her mother, and it happened on visits. The incident that was most upsetting to her, she said, was one where she was sort of half asleep and half awake and she was dreaming that her stepmother was hurting her in some way and she woke up and saw that it was her father, and she started crying and begged him to stop and he wouldn't stop, and so she got up and went into the other room where her stepmother was.

Later, Cardinale testified that Jane told her "the most upsetting incident that happened to her was a time that her father was holding her in his lap in a large chair, perhaps a recliner chair, and he touched her vagina. And she indicated another time he had made her take a shower with him and she didn't want to, and she later told her mother who talked to him and he didn't ask her to do it again."

The State elicited no testimony regarding the length and complexity of the sessions, when the sessions occurred, where they occurred, who else was present, or even whether the statements were made in individual or group therapy. At oral argument, the State argued that because these statements, regardless of when they were made, were made during the course of treatment, they were admissible.

Merely because the statements were made during the course of treatment does not make them admissible under the medical treatment exception. The rule contains words of limitation without which the rule would lose its underlying guarantee of trustworthiness. All statements made in the context of psychological counseling, regardless of their content, may well be relevant to diagnosis or treatment. Accepting the State's argument, that everything said by the girls throughout the year and up until the time of trial is admissible under the medical treatment exception, would ignore the language of the rule that the statements must also be pertinent to medical treatment. The State's position renders the pertinency requirement meaningless as a standard.

7

In *Fleming v. State*, this Court concluded that under the facts of that case, a child's statements "describing abusive acts and identifying the abuser were reasonably pertinent to medical diagnosis and treatment, and were properly admitted" under rule 803(4). 819 S.W.2d 237, 247 (Tex. App.—Austin 1991, pet. denied). In so holding, we explained that, "unlike ordinary medical problems, the treatment of child abuse includes removing the child from the abusive setting. Thus, the identity of the abuser is *pertinent to medical treatment of the child*." *Id.* (emphasis added).

*Fleming* does not broaden the medical diagnosis or treatment exception to encompass every statement made by a child victim of sexual abuse to a therapist; rather, *Fleming* allows the admission into evidence of the child's statement regarding the identity of the abuser when the identity of the abuser is pertinent to the medical treatment of the child.[7] Further, that case does not support the blanket conclusion that statements made to a therapist regarding specific offenses are admissible as having been made for the purposes of treatment. As the San Antonio Court of Appeals explained in *Macias v. State*, a case on which we relied in *Fleming*, rule 803(4) explicitly includes statements of the "*inception* or *general character* of a cause or external source thereof, *insofar as reasonably pertinent to diagnosis or treatment*." 776 S.W.2d 255, 259 (Tex. App.—San Antonio 1989, no pet.) (emphasis added). Our language in *Fleming* does not relieve the proponent of hearsay from satisfying

---

[7] The narrow holding of *Fleming* has been recognized by other courts. *See, e.g.*, *Ware v. State*, 62 S.W.3d 344, 351 (Tex. App.—Fort Worth 2001, no pet. h.) (citing *Fleming* for proposition that statements concerning identity of abuser "may be" reasonably pertinent and thus fall within medical diagnosis or treatment exception); *Molina v. State*, 971 S.W.2d 676, 684 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (same). *But see Turner v. State*, 924 S.W.2d 180, 182 (Tex. App.—Eastland 1996, pet. ref'd) (citing *Fleming* for proposition that "[s]tatements describing abusive acts are pertinent to medical diagnosis and treatment").

the rule's requirement that it be both made for the purpose of *and* reasonably pertinent to medical diagnosis or treatment.

Rule 803(4) is premised on the patient's selfish motive in receiving appropriate treatment. It is that motive on the part of the declarant that renders the statement trustworthy. To be admissible, the proponent of evidence under rule 803(4) must show that the declarant had the appropriate state of mind when making the declaration. Here, that element, *i.e.*, the strong motive for the declarant to tell the truth to promote treatment, has not been shown. Without establishing the girls' state of mind at the time they made the statements, the guarantee of trustworthiness disappears, and the statements then stand on no more reliable grounds than any other hearsay.

That the State failed to carry its burden of establishing the statements' admissibility demonstrates the danger of allowing the statements into evidence without the safeguards inherent in the rule.[8] Cardinale's counseling sessions were not close in time to the abuse, occurring many years after the events the girls discussed. By the time the statements were repeated to Cardinale, the girls had already reported their allegations three separate times. Because they had already told "their story to lots of strangers," Cardinale allowed their mother to relay the girls' story at the first visit, and they were unwittingly exposed to her rendition of the facts.

---

[8] Addressing the admissibility of hearsay statements made by a child witness in child sexual abuse cases, the Supreme Court recognized generally that there are a number of factors that relate to whether such statements are reliable, including the: (i) spontaneity and consistency of repetition; (ii) mental state of the declarant; (iii) use of terminology unexpected of a child of similar age; and (iv) lack of motive to fabricate. *Idaho v. Wright*, 497 U.S. 805, 821 (1990) (citations omitted). These factors are not exclusive. *Id.* The unifying principle is that each factor bears on whether the child declarant is particularly likely to be telling the truth when making the statement. *Id.* The girls' credibility need not be challenged to raise concerns about the statements' reliability.

Cardinale's testimony that she impressed upon the girls "the need for them to be honest and truthful" is no substitute for applying the rule's requirements. *See Sneed v. State*, 955 S.W.2d 451, 454-55 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd) ("The sponsoring witness had no knowledge about the source or accuracy of the information . . . . Thus, as to the basis of the statements and their accuracy, there is no evidence that establishes reliability or trustworthiness."). There is no evidence in the record that the girls recognized and appreciated the interests underlying the medical exception or that their frame of mind was comparable to a patient seeking treatment.[9] As this Court recognized in *Fleming*, very young children may not understand the need to be truthful with a physician, nurse, or other caregiver. *See* 819 S.W.2d at 247. That does not mean that a physician should cease to listen to a patient's complaints simply because that patient is a child. But neither does it mean that everything a patient says—adult or child—is relevant to treatment or diagnosis or that the patient is making the statements for those purposes.

Even if we assume that the girls' statements were made for the purposes of medical treatment or diagnosis, the State must still satisfy the pertinency requirement. The State first asked: "[A]t the outset of your meeting or treatment or therapy with [Mary] and [Jane], did you interview them concerning what had happened to them? Or maybe not at the outset, but at some point during their therapy?" Shortly thereafter, without reference to when the statements were made,[10] their

---

[9] Cardinale's testimony was based on her memory of what the girls told her and her notes of the sessions. This is not a case where a party is attempting to introduce a tape recording of the statements. *See generally Willover v. State*, No. 746-01, 2002 Tex. Crim. App. LEXIS 46 (Tex. Crim. App. Mar. 13, 2002) (objecting to introduction of videotaped statements).

[10] During opening statements, the State admonished the jury that "all we're attempting to prove here is that this conduct took place some point within the umbrella of 10 years prior to [the indictment]." The State also stated "the only date[] that we've alleged that we really know or have

10

context, or whether the statements were made in group or individual therapy, the State asked: "What statements did [Mary] make to you concerning her abuse for the purpose of diagnosis and/or treatment of her condition?" The mere recital of boiler-plate testimony does not satisfy the State's burden.

Without more, I would conclude that the State failed to establish the applicability of rule 803(4).[11] I would further conclude that the State's position—that all statements made during the girls' course of treatment are admissible—allows for an insidious accretion of impermissible hearsay testimony and stretches the medical treatment exception beyond its intended bounds. Because the State failed to meet its burden to establish the foundation for the admissibility of the therapist's testimony of the girls' statements under the medical treatment exception, I would conclude that the trial court erred in admitting the statements.

***Harmless Error***

When conducting a harm analysis, any non-constitutional error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. Tex. R. App. 44.2(b). When

---

some clear indication of when that actually took place . . . [is] the Aggravated Sexual Assault Count . . . ."

[11] To fall within this exception, statements need not be made to a physician. *See, e.g.*, *Gohring v. State*, 967 S.W.2d 459, 461 (Tex. App.—Beaumont 1998, no pet.) ("if the statement is made to another for the purpose of medical treatment, the person to whom the statement is made does not necessarily have to be a 'medical person'"); *see also* Fed. R. Evid. 803(4) advisory committee's note (explaining that "[s]tatements to hospital attendants, ambulance drivers, or even members of the family might be included" under the rule 803(4) exception). But the breadth of the exception is far from clear. Because the Court addresses Cardinale's qualifications, I do not write separately on that issue, except to note that merely concluding someone qualifies as a medical professional does not end the inquiry of whether statements made to that individual are admissible.

11

applying this rule, a reviewing court should be concerned with the integrity of the process leading to the conviction, not the propriety of the trial's outcome. *Fleming*, 819 S.W.2d at 248 (citing *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989)). We will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have a fair assurance that the error did not influence the jury, or influenced the jury only slightly. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001). "This means the appellate court should consider *everything in the record*, including testimony and physical evidence, the nature of the evidence supporting the verdict, and the character of the error and its relationship to other evidence." *Id.* (emphasis added).

Without minimizing the possible impact of Cardinale's improper hearsay, after a careful review of the record, I am satisfied that the State's case did not affect appellant's substantial rights. *See Fleming*, 819 S.W.2d at 248. The State called both girls as witnesses. Jane testified to incidents of sexual abuse occurring at age five when she took a shower with her dad and washed "his private parts." She also described an incident of abuse where she was sitting on appellant's lap in a reclining chair and he touched her underneath her underpants, which she thought occurred about a year after the shower incident. Mary testified that when she was "about six," appellant also made her shower with him and wash his penis. She stated that, on another occasion shortly after the shower incident, she and her dad were taking a bath together and "he picked [her] up and placed [her] on him" and that "[h]e rubbed [her] body up and down."

Appellant elected to testify on his own behalf. He admitted that some of the incidents to which his daughters testified happened, but disagreed with their characterizations of them. For example, he stated that, in response to her request, "Dad, let me wash you," Mary did touch his penis.

12

However, he explained that he did so only "because [he] felt as a parent [he] did not want to raise alarm or shock because of any anatomical part of [his] body being weird or expressly, you know, off limits, especially at that age . . . ." Appellant also testified to an incident involving Jane where he put his hands down her pants, underneath her underwear, and rubbed her buttocks with his hand, explaining he did so because "[t]here was an on-going joke that she had a cute butt."[12] He stated that he could see in hindsight that it may not have been appropriate. As to the aggravated sexual assault charge, again, appellant admitted that certain acts occurred; he merely disputed that he, as opposed to Mary, initiated the inappropriate contact.

In addition to appellant's testimony, the record contains a written statement introduced by the State in which appellant states: "I am very sorry for what I have done, [Mary] and [Jane] have been raised to tell the truth. Although my memory of events is not clear, I know that what they themselfs [sic] spoke on their own was the truth." Given appellant's own statements, that he believed his daughters were telling the truth, and his testimony regarding the incidents for which the jury convicted him, I would conclude that the error in admitting Cardinale's testimony was harmless. The facts of this case are unique, however, because appellant's own statements support his convictions and he vouched for his daughters' credibility.

The problem inherent in this type of hearsay is the tendency to disregard the entirety of the rule in favor of merely incanting the phrase "for purposes of medical treatment or diagnosis." In cases relying on medical diagnosis or treatment hearsay statements, there is a very real danger that out-of-court statements will be admitted without the appropriate inquiry. I believe that is what

---

[12] Appellant testified that he believed this act occurred when Jane was eleven.

13

happened here, but because the improper admission of the testimony was harmless, I would affirm appellant's convictions.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   March 28, 2002

Publish