James Gibson MOORE, III, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 03–01–00176–CR, 03–01–00177–CR.

Court of Appeals of Texas, Austin.

March 28, 2002.

Rehearing Overruled May 2, 2002.

Discretionary Review Refused Aug. 21, 2002.

Roy E. Greenwood, Austin, for appellant.

John M. Bradley, District Attorney, Georgetown, for appellee.

Before Justices KIDD, YEAKEL and PATTERSON.

MACK KIDD, Justice.

Appellant James Gibson Moore, III was convicted by a jury on two counts of indecency with a child and one count of aggravated sexual assault. Appellant's two daughters, aged thirteen and fifteen at the time of trial, were the victims of these offenses. The jury assessed punishment

at ten years for each conviction for indecency with a child, and thirty years for the conviction for aggravated sexual assault. Appellant raises seven points of error. We affirm the judgments.

## BACKGROUND

Appellant was indicted on eight counts; he was acquitted on five. Appellant was convicted for one count of indecency with a child against his younger daughter. This offense occurred on May 14, 1996. He was convicted for two counts involving his older daughter. The offense of indecency with a child occurred on September 21, 1992; the aggravated sexual assault occurred on January 7, 2000. During the guilt/innocence phase of the trial, testimony describing these incidents was given by the two victims, a clinical social worker who had been meeting with the girls in therapy sessions, and appellant.

The complaining witnesses testified to various incidents of inappropriate behavior by their father during the times they were with him at his house.[1] Examples of conduct described as inappropriate were that appellant would go to the bathroom in front of his daughters, walk around in his underwear, and sleep with them. Appellant's daughters stated that when their father slept with them, he would cuddle and wrap his legs around theirs, pressing himself against them. There was also testimony that appellant videotaped his daughters in the shower with their stepmother.

Appellant's younger daughter testified that, on one particular occasion, appellant sat down in his recliner and put her on his lap. He then reached under her clothes and proceeded to rub her vagina for a number of minutes. In a separate instance, the elder daughter testified that

appellant required her to shower with him, even though she objected. Once in the shower, appellant made her wash his body. When she did not wash his penis, appellant took her hand and required her to do so. She also testified that two weeks after this shower, appellant made her take a bath with him where he touched his penis to her vagina. Without reference to a specific incident, she stated that her father touched her breasts and vagina on several occasions.

Although much time had passed since the two acts leading to indecency with a child convictions had occurred, neither daughter made an outcry until after the January 7, 2000 aggravated sexual assault occurred. Both appellant and his older daughter, the victim in this particular incident, testified as to the occurrence. She stated that she was in the bedroom watching television when her father came into the room and got in bed with her, wearing only a pair of boxer shorts. While laying in bed, appellant put his finger in her mouth. After this occurred, she attempted to leave the room, but because the door was locked, she laid back onto the bed. Appellant then forced her to perform oral sex on him. Appellant's rendition of the incident is somewhat different. He claims that he and his daughter were watching television while lying in bed as they often did. He explained that he had been drinking, and because of his drunken state, he said that he began sucking his daughter's finger. Then he claims that she voluntarily grabbed his penis and touched her mouth to it. After this oral contact, which he said lasted only momentarily, she jerked her head up and left the room. He admits this conduct occurred and that it was wrong, but he disputes the State's contention that he *forced* her to do anything.

---

1. The victims did not live with their father.

## DISCUSSION

### Medical Treatment Exception to the Hearsay Rule

In his first point of error, appellant argues that the trial court erred in admitting hearsay testimony in which a social worker recounted statements the victims made to her during therapy sessions. Some of these statements include the victims' description of the offenses. After appellant objected on hearsay grounds, the State succeeded in getting these statements admitted under the medical purposes and treatment exception to the hearsay rule. That exception allows for admission of the following hearsay statements:

(4) **Statements for Purposes of Medical Diagnosis or Treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Tex.R. Evid. 803(4). Appellant challenges the application of Rule 803(4) because he claims that the witness is not part of the medical profession and thus, any statements made to her could not have been made for purposes of medical diagnosis or treatment.

The witness, Judy Cardinale, began meeting with the victims for therapy sessions a short time after their initial outcry. Since their first meeting, Cardinale met with the victims about once or twice per week up to the time of appellant's trial. The girls participated in individual and group therapy. In sum, Cardinale met with the girls for about forty therapy sessions, thirteen or fourteen of which were individual meetings.

Cardinale's testimony included a general discussion about the types of characteristics and symptoms displayed by many young children who have been the victims of sexual assault. She also testified about her observations and opinions concerning appellant's daughters. Part of her testimony, which was given without objection, concerned each girl's symptoms and treatment. However, Cardinale's testimony repeating statements made by each victim, during their therapy sessions, about specific instances of abuse, elicited appellant's hearsay objection. The State maintains that these statements, describing the specific acts of abuse and identifying appellant as the aggressor, are within the scope of Rule 803(4) because they were made to a licensed therapist in the course of her diagnosis and treatment of the victims.

The medical treatment exception to the hearsay rule is based on the assumption that the patient appreciates that the effectiveness of the treatment may depend on the accuracy of the information provided to the physician. *Fleming v. State*, 819 S.W.2d 237, 247 (Tex.App.-Austin 1991, pet. ref'd). In applying the medical treatment exception to cases involving child abuse, courts have allowed the victim's statements concerning the identity of the attacker to be admitted because treatment of child abuse must begin with removing the child from the abusive setting. *Id.; see also Beheler v. State*, 3 S.W.3d 182, 189 (Tex.App.-Fort Worth 1999, pet. ref'd); *Molina v. State*, 971 S.W.2d 676, 683–84 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). While appellant does contend that the statements identifying him were inadmissible hearsay, the crux of his appeal is that the statements were made to a person who is not a member of the medical profession and who lacks medical training.

In every case we have found, save two, in which statements were introduced using

Rule 803(4), the witness would have satisfied the Legislature's definition of a physician or health care provider as defined in the medical malpractice statute.[2] *See Gregory v. State,* 56 S.W.3d 164 (Tex.App.-Houston [14th Dist.] 2001, no pet. h.) (registered nurse allowed to testify about statements made and symptoms of child abuse victim); *Beheler v. State,* 3 S.W.3d 182 (Tex.App.-Ft. Worth 1999, pet. ref'd) (sexual assault nurse examiner at hospital testified about interview with patient prior to conducting physical exam); *Molina v. State,* 971 S.W.2d 676 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd) (physician testified to statements made by victim during physical examination); *Torres v. State,* 807 S.W.2d 884 (Tex.App.-Corpus Christi 1991, pet. ref'd) (nurse allowed to testify under Rule 803(4) about victim's answers to questions asked during collection of samples for "rape kit"); *Fleming v. State,* 819 S.W.2d 237 (Tex.App.-Austin 1991, pet. ref'd) (physician and mental health therapist testified about victim's statements). *But see Puderbaugh v. State,* 31 S.W.3d 683 (Tex.App.-Beaumont 2000, pet. ref'd) (clinical social worker who practiced with physicians in a family office practice testified about statements made during therapy by a victim of child abuse); *Gohring v. State,* 967 S.W.2d 459 (Tex.App.-Beaumont 1998, no pet.) (therapist, under supervision of licensed psychologist, could testify about victim's statements).[3]

We recognize that some courts have allowed therapists to testify about statements made to them during the course of individual and group therapy sessions. However, to ensure that the medical treatment exception's assumption that patients seeking medical care will be honest and truthful in relaying symptoms in order to obtain proper and effective treatment remains intact, the offered witness's qualifications must be shown to conform to the rule. *See Fleming,* 819 S.W.2d at 247. If a witness's testimony fails to meet Rule 803(4)'s criteria requiring that the statements be made to medical personnel in the course of diagnosis and treatment, then that testimony cannot overcome the hearsay rule.

In the present case, Cardinale testified about statements made to her by appellant's daughters. She related, with some detail, what each girl had told her describing various instances of abuse. Although Cardinale's testimony describing what each victim told her about the specific offenses for which appellant was convicted was brief, it accurately repeated the testimony given by each victim. In addition to the specific offenses for which appellant was convicted, Cardinale testified that other instances of abuse had occurred with some frequency. While this Court has recognized that such statements may be admissible as having been made for purposes of treatment, *see Fleming,* 819

---

**2.** The Medical Liability and Insurance Improvement Act contains the following definitions:

"Physician" means a person licensed to practice medicine in this state.

"Health care provider" means any person, partnership, professional association, corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health care as a registered nurse, hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer, employee, or

agent thereof acting in the course and scope of his employment.

Tex.Rev.Civ. Stat. Ann. art. 4590i, § 1.03 (West Supp.2002).

**3.** The Beaumont court of appeals found that the medical care component of Rule 803(4) was satisfied because the clinical social worker practiced with physicians and the patient/victim had been referred to the social worker for treatment by her family practitioner.

S.W.2d at 247, we do not believe that the State carried its burden in this case for admitting Cardinale's testimony.

Cardinale's qualifications, which perhaps could establish her connection with the medical profession, are not well identified in the record. She testified that she is licensed by the State of Texas as a clinical social worker and an advanced clinical practitioner. She also stated that she is licensed as a psychotherapist, but is not licensed as a psychiatrist or psychologist. The State did not elicit testimony to explain how a psychotherapist differs from a psychiatrist or psychologist and exactly what type of training is required to become a licensed psychotherapist. Furthermore, Cardinale testified that she did not possess any medical degrees and could not prescribe medicine. However, she did testify that she provides a medical diagnosis to each of her clients using the Diagnostic and Statistical Manual. The record does not contain any testimony explaining how Cardinale uses this Diagnostic and Statistical Manual or what type of training she has received in order to provide a medical diagnosis.

Although the State proved that Cardinale has received her master's degree in social work and is licensed by the State as a clinical social worker, the State failed to present proof of her qualifications for licensure. The State did not present evidence concerning the requirements for licensure and whether, as a social worker who provided medical diagnoses, Cardinale received special training, was answerable to a board which governed licensed social workers, or had to meet any advanced continuing education requirements. These factors tend to indicate membership in a profession. Because the State did not establish any of these with respect to Cardinale's occupation, it failed to meet its burden under Rule 803(4). Because the record does not have sufficient information for us to determine that Cardinale has received medical training and can qualify as a member of the medical profession, and because Rule 803(4) clearly requires the statements by the declarant be made for purposes of medical diagnosis or treatment, we hold that the trial court erred in admitting Cardinale's testimony over appellant's objection.

### Harm Analysis

Error in the admission of evidence is subject to a harm analysis under Rule 44.2(b) of the rules of appellate procedure. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). A violation of the evidentiary rules that results in the erroneous admission of evidence is nonconstitutional error. *See King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Tate v. State*, 988 S.W.2d 887, 890 (Tex. App.-Austin 1999, pet. ref'd). Any nonconstitutional error "that does not affect substantial rights must be disregarded." Tex. R.App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King*, 953 S.W.2d at 271. A criminal conviction should not be overturned for nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect. *See Johnson*, 967 S.W.2d at 417. It is well-established that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex.Crim.App. 1999) (holding that any error in the admission of hearsay testimony was harmless in light of other properly admitted evidence proving the same fact).

Appellant contends that the erroneous admission of Cardinale's testimony

caused harm because it was the only evidence corroborating the victim's testimony about the incident for which appellant was convicted of aggravated sexual assault. But this evidence did not require corroboration because *both* the victim and *appellant* testified to the incident. Although appellant claims that he did not force his daughter to perform any sexual acts, the victim testified to the contrary. Furthermore, Cardinale's testimony merely summarized, in a single sentence, a factual depiction of the incident in question. Cardinale did not testify in any detail whatsoever as to whether the act was forced or voluntary. Therefore, we find the admission of her testimony was harmless. Accordingly, we overrule appellant's first issue.

### Other Points of Error

In his second and third points of error, appellant contends that the trial court erred in proceeding with the trial over his objection after a juror became ill. Appellant claims that by continuing the trial without a full jury panel, the trial court denied him his constitutional and statutory rights. Tex. Const. art. XIII, § 5; Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp.2002). On the fifth day of the jury trial, a juror reported to the court that he was suffering from a severe gastrointestinal illness and was too weak to come to court. Although appellant objected and requested the trial be postponed, the trial court chose to proceed under article 36.29, which allows a trial to proceed with fewer than twelve jurors if a panel member becomes disabled. *See* Tex.Code Crim. Proc. Ann. art. 36.29(a).[4]

The court of criminal appeals has interpreted "disabled" as involving physical illness, mental condition, or emotional state which hinders one's ability to perform one's duties as a juror. *Landrum v. State*, 788 S.W.2d 577, 579 (Tex.Crim.App. 1990). The term disabled can also mean any condition that inhibits the juror from fully and fairly performing the functions of a juror. *Griffin v. State*, 486 S.W.2d 948, 951 (Tex.Crim.App.1972). The determination as to whether a juror is disabled is within the discretion of the trial court. *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim.App.1999). Absent an abuse of that discretion, no reversible error will be found. *Id.*

Appellant contends that a stomach ailment is insufficient to render a juror disabled because such an illness is temporary. However, we note that other courts have found that jurors who complained of other *temporary* illnesses that impaired their ability to perform the functions of a juror were properly determined by the trial court to be disabled. *See Hughes v. State*, 787 S.W.2d 193, 195 (Tex.App.-Corpus Christi 1990, writ ref'd) (juror excused after complaining of nausea, headaches, and vomiting); *Allen v. State*, 536 S.W.2d 364, 366–67 (Tex.Crim.App.1976) (juror properly determined to be disabled after having been diagnosed with influenza). A juror's inability to come to the courthouse due to a severe gastrointestinal ailment

---

4. **Art. 36.29. If a Juror Dies or Becomes Disabled**

 (a) Not less than twelve jurors can render and return a verdict in a felony case. It must be concurred in by each juror and signed by the foreman. Except as provided in Subsection (b), however, after the trial of any felony case begins and a juror dies or, as determined by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict; but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it.

provides some evidence of the requisite incapacity from performing the duties assigned to that juror that the trial court may consider in making a determination of disability. Although a stomach ailment is only temporary, it remains within the trial court's discretion to determine whether this juror had become disabled. The situation here is indistinguishable from that in *Hughes* and *Allen.* We therefore cannot say that the trial court abused its discretion in determining that this juror's ailment rendered him disabled. Points of error two and three are overruled.

Appellant's fourth issue on appeal is that the trial court erred in overruling his objection to the testimony of Paul Szendrey discussing whether tapes seized from appellant contained pornography. Szendrey testified that he was the supervisor of the property and evidence section of the Williamson County Sheriff's Department. On cross examination, Szendrey was asked whether, as part of his job, he had viewed the approximately twenty videotapes taken from appellant. Szendrey responded that he had viewed the tapes. Appellant then asked, referring to a particular videotape, "Any reference to any nudity at all was solely contained on this particular video tape, correct?" Szendrey answered in the affirmative. Immediately thereafter, on redirect examination, the State asked, "Sir, there were some tapes of other pornographic images in those beta and video tapes of adults, wasn't there?" After appellant's objection, the State responded that appellant had opened the door for this testimony by his previous question. The trial court overruled the objection.

■■■ Appellant claims that this was error because his questioning of Szendrey was confined to an inquiry of whether there were naked images of his daughters on one of the tapes. Appellant contends that the State's question improperly sought admission of immaterial extraneous bad acts. Tex.R. Evid. 404(b). The State responds that appellant's question was broader in scope than appellant now claims and that it resulted in giving the jury a false impression. When a witness takes the stand and leaves a false impression, the witness "opens the door" to the admission of evidence that would correct the false impression. *Murphy v. State,* 587 S.W.2d 718, 722 (Tex.Crim.App.1979). In determining whether a false impression was created, however, we must examine the testimony in context, rather than in a vacuum. *Prescott v. State,* 744 S.W.2d 128, 131 (Tex.Crim.App.1988).

■■■ Appellant's question did not specifically reference *which persons* were alleged to have appeared on the videotape. The State argues that Szendrey's answer to appellant's question implied that only one of the approximately twenty videotapes contained pornography. Based on the entirety of Szendrey's testimony, we believe that the impression received from his answer to appellant's question was that only one tape contained nudity. Appellant did not make it clear that he was asking Szendrey solely about naked pictures or videos of the *victims.* Because a false impression was created as to whether only one of the twenty videotapes contained pornographic images, the State was entitled to ask a follow-up question to correct that impression. We overrule appellant's fourth point of error.

Appellant next complains that the trial court erred in not defining "caused" in the jury charge. At the conclusion of the trial, the charge read to the jury inquired whether the defendant *caused* his daughter to have oral contact with his sexual organ. Appellant's contention was that because the victim acted voluntarily, as opposed to being forced, that he had not *caused* her conduct. Accordingly, he re-

quested that the court define the word "caused" to accommodate his defense. The trial court denied his request.

 If a phrase, term, or word is statutorily defined, the trial court must submit the statutory definition to the jury. *Alexander v. State*, 906 S.W.2d 107, 111 (Tex.App.-Dallas 1995, no pet.); *Willis v. State*, 802 S.W.2d 337, 342 (Tex.App.-Dallas 1990, pet. ref'd). Words that are not statutorily defined are to be given their common, ordinary, or usual meaning. *Roise v. State*, 7 S.W.3d 225, 242 (Tex. App.-Austin 1999, pet. ref'd). No specific instruction is required for these words in the jury charge. *Martinez v. State*, 924 S.W.2d 693, 698 (Tex.Crim.App.1996) (no definitional instruction was required for word "presence" as it had not been administratively or legislatively defined). Jurors are presumed to know and apply the common and ordinary meaning of words. *Cuevas v. State*, 742 S.W.2d 331, 346 (Tex. Crim.App.1987). Only if the word or term does not have a common meaning that the jurors can be fairly presumed to know and apply must a definition be supplied. *Holmes v. State*, 962 S.W.2d 663, 674 (Tex. App.-Waco 1998, pet. ref'd, untimely filed).

 Although appellant acknowledges that "caused" is not defined in the Penal Code, he believes that the circumstances of this case warrant a specific definition in the jury charge. That belief rests on the fact that his defense to the aggravated sexual assault charge is that the act was not *forced* or *caused* by him. In support of his argument, appellant relies on *Whaley v. State*, 717 S.W.2d 26, 31 (Tex.Crim.

App.1986), for the proposition that a definition of a word, which would normally remain undefined in the charge, may be required in certain instances depending on the facts of the case. In *Whaley*, the court held that, although originally an undefined term, "constructive transfer" had acquired a particular meaning requiring a definition in the jury charge. We find appellant's reliance on *Whaley* unpersuasive.

This case differs from *Whaley* because "constructive transfer" is a term of art found within the statutory definition of "deliver" as it pertains to controlled substances. As such, it assumes a particular meaning when used within that definition.[5] "Caused" has not acquired a particular meaning when used in conjunction with an aggravated sexual assault charge. "Caused" is not a term of art. Its ordinary and common meaning controlled its usage and the jury is presumed to be able to apply that meaning. The trial court did not err in refusing to include a definition of "caused" in the jury charge. We overrule appellant's fifth point of error.

In his sixth and seventh points of error, appellant contends the trial court erred in denying him a hearing under Texas Rule of Evidence 104(b) to determine the preliminary question of the admissibility of extraneous offenses offered by two witnesses during the punishment phase of the trial. In a bench conference, prior to beginning the direct examination of the first witness, the State informed the court that it had given proper notice of its intent to call these witnesses. Tex.Code Crim. Proc. Ann. art. 37.07, § 3(g) (West Supp. 2002). In addition, this discussion in-

---

**5.** In deciding *Whaley v. State*, 717 S.W.2d 26, 31 (Tex.Crim.App.1986), the court of criminal appeals discussed a previous case in which it chose to follow other courts that had defined "constructive transfer." *See Rasmussen v. State*, 608 S.W.2d 205, 209–10 (Tex.Crim.App. 1980) (adopting *State v. Ellis*, 161 W.Va. 40, 239 S.E.2d 670 (1977); *State v. Guyott*, 195 Neb. 593, 239 N.W.2d 781 (1976)). Therefore, by the time *Whaley* was decided, two years after the court had originally defined "constructive transfer" in *Rasmussen*, that term had a recognized particular meaning. The term "caused" lacks a similar pedigree.

formed the court of the nature of the testimony.

 The trial court has the responsibility of determining the threshold admissibility of extraneous offense evidence at the punishment phase; that is, the court must make an initial determination at the proffer of the evidence that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense. *See Mitchell v. State*, 931 S.W.2d 950, 954 (Tex.Crim.App.1996); *see also Harrell v. State*, 884 S.W.2d 154, 160 (Tex.Crim.App.1994). Appellant cites no authority to support his claim that, under rule 104(b), this initial determination must be made by the court following a hearing as opposed to some other form of preliminary review.

 While the trial court made no express ruling on the admissibility of the extraneous offenses, its denial of appellant's request for a hearing following the State's proffer constitutes an implied ruling of admissibility. Further, the trial court gave the proper jury instruction on burden of proof of extraneous offenses, and appellant does not contend that the State failed to prove the extraneous offenses beyond a reasonable doubt. An appellate court reviews the trial court's decision to admit extraneous offense evidence under the abuse of discretion standard. *See Mitchell*, 931 S.W.2d at 953. We hold that the trial court's refusal to hold a hearing outside the presence of the jury on the admissibility of extraneous offense evidence resulted in no harm to appellant. No abuse of discretion is shown in the trial court's admission of evidence of extraneous offenses. Appellant's sixth and seventh points of error are overruled.

## CONCLUSION

We hold that the admission of Cardinale's testimony under the medical treatment exception to the hearsay rule was error because the State failed to show that its witness was qualified as a member of the medical profession. However, because the admission of her testimony did not result in harm, appellant's conviction does not warrant reversal. Appellant's remaining points of error are overruled in accordance with the discussion above. The judgments of conviction are affirmed.

Concurring Opinion by Justice PATTERSON.

JAN P. PATTERSON, Justice, concurring.

After examining the record, I would conclude that, but for appellant's testimony vouching for his daughters' credibility and substantiating the acts underlying his convictions, introduction of his daughters' statements through their therapist would constitute reversible error. Because I agree that the admission of improper hearsay evidence at trial was harmless, I join the Court's opinion. I write separately to address the admissibility of such statements under the medical treatment exception to the hearsay rule.

## ADDITIONAL BACKGROUND

The State indicted appellant in two separate causes, alleging sexual offenses against his two daughters. Cause one, relating to incidents with appellant's youngest daughter ("Jane"),[1] consisted of two counts of indecency with a child by contact. Cause two, relating to incidents

---

1. "Jane" (a pseudonym) was eleven years old when the allegations arose and twelve years old at the time of trial.

with appellant's eldest daughter ("Mary"),[2] consisted of three counts of aggravated sexual assault of a child by contact and three counts of indecency with a child by contact.

The girls made their first allegations of abuse to their school counselor in late January 2000. One of Jane's peers, during a session prompted by the suicide of another student, advised the counselor that she should talk with Jane regarding "[s]omething about her father." The counselor then contacted Jane, who stated that her father had touched her inappropriately. Based upon this information, the counselor contacted Mary, who stated she too had been sexually abused. The school counselor then contacted Child Protective Services and the girls' mother. Both girls subsequently provided written statements to the police.

Approximately three weeks after reporting the sexual abuse to their school counselor and the police, the girls began seeing a therapist, Judy Cardinale. The initial session consisted of the girls' mother recounting their allegations of sexual abuse; the girls "stayed in the room to make sure she got it right." Cardinale testified generally that (i) the mother's statements, and those made by the girls "[a]t other times during therapy," were made for the purposes of diagnosing and treating the girls and (ii) she impressed upon the girls "the need for them to be honest and truthful about what had occurred." During the course of more than forty sessions over a period of a year, in individual and group therapy, the girls revealed incidents of

abuse. Cardinale stated that she did not investigate the veracity of the facts communicated to her by the girls.

## DISCUSSION

Appellant challenges the trial court's ruling permitting Cardinale to repeat statements made to her by his daughters during their year-long course of therapy. Appellant does not challenge Cardinale's qualifications as an expert witness; rather, appellant contends that the trial court erred in admitting hearsay evidence by permitting the girls' therapist to testify concerning their out-of-court statements detailing incidents of sexual abuse. *See* Tex.R. Evid. 803(4). The State responds that the district court properly permitted Cardinale to repeat the statements made by Mary and Jane because they were made for purposes of medical treatment or diagnosis. *See id.*[3]

A trial court's determination as to the admissibility of evidence is reviewed under an abuse of discretion standard. *Green v. State,* 934 S.W.2d 92, 100–02 (Tex.Crim. App.1996); *Kelly v. State,* 824 S.W.2d 568, 574 (Tex.Crim.App.1992). Where the State seeks to introduce testimony, it bears the burden of establishing the admissibility of such evidence. *See Kelly,* 824 S.W.2d at 573. With regard to hearsay then, the proponent of hearsay evidence must point to a hearsay exception before such testimony will be admitted. *See, e.g., A.F. Conner & Sons, Inc. v. Tri County Water Supply Corp.,* 561 S.W.2d 466, 471 (Tex.1978). Thus, the burden is on the

---

**2.** "Mary" (a pseudonym) was thirteen years old when the allegations arose and fourteen years old at the time of trial.

**3.** Courts have been willing to construe the exceptions to the rule against hearsay broadly to permit out-of-court statements of alleged victims of child abuse to be admitted into evidence as excited utterances, statements for purposes of medical treatment, or under the residual exception of the hearsay rule. Because the State does not contend that the statements were admissible under any other evidentiary rule, we address only its contentions regarding rule 803(4).

proponent of the hearsay statement to establish its admissibility.

### Admission of Evidence

Although we must be sensitive to the difficulties involved in prosecuting cases involving child abuse, we "cannot alter evidentiary rules merely because litigants might prefer different rules in a particular class of cases." *Tome v. United States,* 513 U.S. 150, 165, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995) (quoting *United States v. Salerno,* 505 U.S. 317, 322, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992)). The rule against hearsay is a rule of exclusion. Courts have long recognized exceptions to that exclusion when the exceptions are tailored to allow the introduction of evidence that is likely to be trustworthy. Undergirding these exceptions is a delicate balancing of the interests in barring unreliable evidence with admitting trustworthy evidence. Common to the various hearsay exceptions is the notion that certain circumstances attendant to the out-of-court statement provide sufficient guarantees of the statement's trustworthiness, thus rendering unnecessary the normal judicial assurances of trustworthiness secured by cross-examination and the oath. 5 *Wigmore on Evidence* §§ 1420, 1422 (3d ed.1940). In this regard, Dean Wigmore observed that

> the purpose and reason of the Hearsay rule is the key to the Exceptions to it. The theory of the Hearsay rule ... is that many possible sources of inaccuracy and untrustworthiness which may lie underneath the bare untested assertions of a witness can be brought to light and exposed, if they exist, by [the] test of cross examination. But this test or security may in a given instance be super-

fluous; it may be sufficiently clear, in that instance, that the statement offered is free enough from the risk of inaccuracy and untrustworthiness, so that the test of cross-examination would be a work of supererogation.

*Id.* § 1420.

So it is with the medical diagnosis and treatment exception. Texas Rule of Evidence 803(4) excepts from the general hearsay rule statements made for purposes of medical diagnosis or medical treatment. *See* Tex.R. Evid. 803(4). Statements made for the purposes of medical diagnosis must describe "medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof." *Id.*[4] The two-part test for admitting these out-of-court statements is: (1) the declarant must make the statement for the purpose of receiving medical treatment, and (2) "the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *United States v. Renville,* 779 F.2d 430, 436 (8th Cir.1985); *see also Rock v. Huffco Gas & Oil Co.,* 922 F.2d 272, 277 (5th Cir.1991). Thus, the declarant must first have a motive consistent with obtaining medical care, knowing that proper diagnosis or treatment depends upon the veracity of such statements. *White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) ("[A] statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility."); *United States v. Iron Shell,*

---

4. Most relevant to psychological and physical trauma inherent in child abuse cases is the portion of the rule requiring that statements relate to the "inception or general character" of the injury's cause. *See Macias v. State,* 776 S.W.2d 255, 259 (Tex.App.-San Antonio 1989, no writ).

633 F.2d 77, 83–84 (8th Cir.1980).[5] And, the statement must be reasonably pertinent, *i.e.,* necessary and proper, to diagnosis and treatment. By satisfying these requirements, the out-of-court statement is deemed to be reliable.

By way of example,[6] a person's statement, "I was hit by a car," made for the purposes of receiving medical treatment, would come within the exception. This is so because it is presumed that the declarant, motivated by the desire to receive accurate medical treatment, is aware that the truthfulness of his statement directly impacts the doctor's ability to diagnose and treat his injuries. Unless there is some evidence indicating that the declarant appreciates the potential harmful consequences of making false statements, the assumption of trustworthiness upon which this exception rests does not exist. *See Gohring v. State,* 967 S.W.2d 459, 462 (Tex.App.-Beaumont 1998, no pet.). In contrast, a person's statement, "I was hit by the car which went through the red light," would not come within the exception; it is inconsequential and irrelevant to medical treatment to know that the car went through the red light. Details of the injury's cause not necessary for treatment do not qualify as an exception under rule 803(4). *Huffco Gas & Oil Co.,* 922 F.2d at 277. Although the two-part reliability test may be more difficult to apply in instances of child sexual abuse, it nevertheless pertains.

At trial, the State elicited from Cardinale out-of-court statements made to her at unspecified times by the girls during the year-long course of therapy. On direct examination, Cardinale testified:

[Mary] told me that she recalled that she had been abused from when she was about five or six years old. Two incidents that she remembered happened when she was relatively young were one in a bathtub, one in a shower, where her father made her touch his penis. She told me that the abuse went on at least once every time that she visited her father, sometimes more than that. She was at that time living with her-well, part of the time she lived with her father and part of the time she lived with her mother, and it happened on visits. The incident that was most upsetting to her, she said, was one where she was sort of half asleep and half awake and she was dreaming that her stepmother was hurting her in some way and she woke up and saw that it was her father, and she started crying and begged him to stop and he wouldn't stop, and so she got up and went into the other room where her stepmother was.

Later, Cardinale testified that Jane told her "the most upsetting incident that happened to her was a time that her father was holding her in his lap in a large chair, perhaps a recliner chair, and he touched her vagina. And she indicated another time he had made her take a shower with him and she didn't want to, and she later told her mother who talked to him and he didn't ask her to do it again."

The State elicited no testimony regarding the length and complexity of the sessions, when the sessions occurred, where they occurred, who else was present, or even whether the statements were made in individual or group therapy. At oral argu-

**5.** Texas rule 803(4) is based on and identical to the federal rule; therefore, federal case law is persuasive authority for interpreting and understanding the Texas rule. *See Fleming v. State,* 819 S.W.2d 237, 247 (Tex.App.-Austin 1991, pet. ref'd).

**6.** This example comes from the advisory committee's note to Federal Rule of Evidence 803(4).

ment, the State argued that because these statements, regardless of when they were made, were made during the course of treatment, they were admissible.

Merely because the statements were made during the course of treatment does not make them admissible under the medical treatment exception. The rule contains words of limitation without which the rule would lose its underlying guarantee of trustworthiness. All statements made in the context of psychological counseling, regardless of their content, may well be relevant to diagnosis or treatment. Accepting the State's argument, that everything said by the girls throughout the year and up until the time of trial is admissible under the medical treatment exception, would ignore the language of the rule that the statements must also be pertinent to medical treatment. The State's position renders the pertinency requirement meaningless as a standard.

In *Fleming v. State*, this Court concluded that under the facts of that case, a child's statements "describing abusive acts and identifying the abuser were reasonably pertinent to medical diagnosis and treatment, and were properly admitted" under rule 803(4). 819 S.W.2d 237, 247 (Tex.App.-Austin 1991, pet. denied). In so holding, we explained that, "unlike ordinary medical problems, the treatment of child abuse includes removing the child from the abusive setting. Thus, the identity of the abuser is *pertinent to medical treatment of the child.*" *Id.* (emphasis added).

*Fleming* does not broaden the medical diagnosis or treatment exception to encompass every statement made by a child victim of sexual abuse to a therapist; rather, *Fleming* allows the admission into evidence of the child's statement regarding the identity of the abuser when the identity of the abuser is pertinent to the medical treatment of the child.[7] Further, that case does not support the blanket conclusion that statements made to a therapist regarding specific offenses are admissible as having been made for the purposes of treatment. As the San Antonio Court of Appeals explained in *Macias v. State*, a case on which we relied in *Fleming*, rule 803(4) explicitly includes statements of the *"inception or general character* of a cause or external source thereof, *insofar as reasonably pertinent to diagnosis or treatment."* 776 S.W.2d 255, 259 (Tex.App.-San Antonio 1989, no pet.) (emphasis added). Our language in *Fleming* does not relieve the proponent of hearsay from satisfying the rule's requirement that it be both made for the purpose of *and* reasonably pertinent to medical diagnosis or treatment.

Rule 803(4) is premised on the patient's selfish motive in receiving appropriate treatment. It is that motive on the part of the declarant that renders the statement trustworthy. To be admissible, the proponent of evidence under rule 803(4) must show that the declarant had the appropriate state of mind when making the declaration. Here, that element, *i.e.*, the strong motive for the declarant to tell the truth to promote treatment, has not been shown.

---

**7.** The narrow holding of *Fleming* has been recognized by other courts. *See, e.g., Ware v. State,* 62 S.W.3d 344, 351 (Tex.App.-Fort Worth 2001, no pet. h.) (citing *Fleming* for proposition that statements concerning identity of abuser "may be" reasonably pertinent and thus fall within medical diagnosis or treatment exception); *Molina v. State,* 971 S.W.2d 676, 684 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd) (same). *But see Turner v. State,* 924 S.W.2d 180, 182 (Tex.App.-Eastland 1996, pet. ref'd) (citing *Fleming* for proposition that "[s]tatements describing abusive acts are pertinent to medical diagnosis and treatment").

Without establishing the girls' state of mind at the time they made the statements, the guarantee of trustworthiness disappears, and the statements then stand on no more reliable grounds than any other hearsay.

That the State failed to carry its burden of establishing the statements' admissibility demonstrates the danger of allowing the statements into evidence without the safeguards inherent in the rule.[8] Cardinale's counseling sessions were not close in time to the abuse, occurring many years after the events the girls discussed. By the time the statements were repeated to Cardinale, the girls had already reported their allegations three separate times. Because they had already told "their story to lots of strangers," Cardinale allowed their mother to relay the girls' story at the first visit, and they were unwittingly exposed to her rendition of the facts.

Cardinale's testimony that she impressed upon the girls "the need for them to be honest and truthful" is no substitute for applying the rule's requirements. *See Sneed v. State*, 955 S.W.2d 451, 454–55 (Tex.App.-Houston [14th Dist.] 1997, pet. ref'd) ("The sponsoring witness had no knowledge about the source or accuracy of the information. . . . Thus, as to the basis

of the statements and their accuracy, there is no evidence that establishes reliability or trustworthiness."). There is no evidence in the record that the girls recognized and appreciated the interests underlying the medical exception or that their frame of mind was comparable to a patient seeking treatment.[9] As this Court recognized in *Fleming*, very young children may not understand the need to be truthful with a physician, nurse, or other caregiver. *See* 819 S.W.2d at 247. That does not mean that a physician should cease to listen to a patient's complaints simply because that patient is a child. But neither does it mean that everything a patient says—adult or child—is relevant to treatment or diagnosis or that the patient is making the statements for those purposes.

Even if we assume that the girls' statements were made for the purposes of medical treatment or diagnosis, the State must still satisfy the pertinency requirement. The State first asked: "[A]t the outset of your meeting or treatment or therapy with [Mary] and [Jane], did you interview them concerning what had happened to them? Or maybe not at the outset, but at some point during their therapy?" Shortly thereafter, without reference to when the statements were made,[10] their context, or

---

**8.** Addressing the admissibility of hearsay statements made by a child witness in child sexual abuse cases, the Supreme Court recognized generally that there are a number of factors that relate to whether such statements are reliable, including the: (i) spontaneity and consistency of repetition; (ii) mental state of the declarant; (iii) use of terminology unexpected of a child of similar age; and (iv) lack of motive to fabricate. *Idaho v. Wright*, 497 U.S. 805, 821, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (citations omitted). These factors are not exclusive. *Id.* The unifying principle is that each factor bears on whether the child declarant is particularly likely to be telling the truth when making the statement. *Id.* The girls' credibility need not be challenged to

raise concerns about the statements' reliability.

**9.** Cardinale's testimony was based on her memory of what the girls told her and her notes of the sessions. This is not a case where a party is attempting to introduce a tape recording of the statements. *See generally Willover v. State*, 70 S.W.3d 841 (Tex.Crim. App.2002) (objecting to introduction of videotaped statements).

**10.** During opening statements, the State admonished the jury that "all we're attempting to prove here is that this conduct took place some point within the umbrella of 10 years prior to [the indictment]." The State also stated "the only date[] that we've alleged that we

whether the statements were made in group or individual therapy, the State asked: "What statements did [Mary] make to you concerning her abuse for the purpose of diagnosis and/or treatment of her condition?" The mere recital of boilerplate testimony does not satisfy the State's burden.

Without more, I would conclude that the State failed to establish the applicability of rule 803(4).[11] I would further conclude that the State's position—that all statements made during the girls' course of treatment are admissible—allows for an insidious accretion of impermissible hearsay testimony and stretches the medical treatment exception beyond its intended bounds. Because the State failed to meet its burden to establish the foundation for the admissibility of the therapist's testimony of the girls' statements under the medical treatment exception, I would conclude that the trial court erred in admitting the statements.

### Harmless Error

When conducting a harm analysis, any non-constitutional error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. Tex. R.App. 44.2(b). When applying this rule, a reviewing court should be concerned with the integrity of the process leading to the conviction, not the propriety of the trial's outcome. *Fleming,* 819 S.W.2d at 248 (citing *Harris v. State,* 790 S.W.2d 568, 587

(Tex.Crim.App.1989)). We will not overturn a criminal conviction for non-constitutional error if, after examining the record as a whole, we have a fair assurance that the error did not influence the jury, or influenced the jury only slightly. *Schutz v. State,* 63 S.W.3d 442, 444 (Tex.Crim. App.2001). "This means the appellate court should consider *everything in the record,* including testimony and physical evidence, the nature of the evidence supporting the verdict, and the character of the error and its relationship to other evidence." *Id.* (emphasis added).

Without minimizing the possible impact of Cardinale's improper hearsay, after a careful review of the record, I am satisfied that the State's case did not affect appellant's substantial rights. *See Fleming,* 819 S.W.2d at 248. The State called both girls as witnesses. Jane testified to incidents of sexual abuse occurring at age five when she took a shower with her dad and washed "his private parts." She also described an incident of abuse where she was sitting on appellant's lap in a reclining chair and he touched her underneath her underpants, which she thought occurred about a year after the shower incident. Mary testified that when she was "about six," appellant also made her shower with him and wash his penis. She stated that, on another occasion shortly after the shower incident, she and her dad were taking a bath together and "he picked [her] up and

---

really know or have some clear indication of when that actually took place ... [is] the Aggravated Sexual Assault Count...."

**11.** To fall within this exception, statements need not be made to a physician. *See, e.g., Gohring v. State,* 967 S.W.2d 459, 461 (Tex. App.-Beaumont 1998, no pet.) ("if the statement is made to another for the purpose of medical treatment, the person to whom the statement is made does not necessarily have to be a 'medical person'"); *see also* Fed. R.Evid. 803(4) advisory committee's note (ex-

plaining that "[s]tatements to hospital attendants, ambulance drivers, or even members of the family might be included" under the rule 803(4) exception). But the breadth of the exception is far from clear. Because the Court addresses Cardinale's qualifications, I do not write separately on that issue, except to note that merely concluding someone qualifies as a medical professional does not end the inquiry of whether statements made to that individual are admissible.

placed [her] on him" and that "[h]e rubbed [her] body up and down."

Appellant elected to testify on his own behalf. He admitted that some of the incidents to which his daughters testified happened, but disagreed with their characterizations of them. For example, he stated that, in response to her request, "Dad, let me wash you," Mary did touch his penis. However, he explained that he did so only "because [he] felt as a parent [he] *did not want to raise alarm or shock be*cause of any anatomical part of [his] body being weird or expressly, you know, off limits, especially at that age...." Appellant also testified to an incident involving Jane where he put his hands down her pants, underneath her underwear, and rubbed her buttocks with his hand, explaining he did so because "[t]here was an on-going joke that she had a cute butt."[12] He stated that he could see in hindsight that it may not have been appropriate. As to the aggravated sexual assault charge, again, appellant admitted that certain acts occurred; he merely disputed that he, as opposed to Mary, initiated the inappropriate contact.

In addition to appellant's testimony, the record contains a written statement introduced by the State in which appellant states: "I am very sorry for what I have done, [Mary] and [Jane] have been raised to tell the truth. Although my memory of events is not clear, I know that what they themselfs [sic] spoke on their own was the truth." Given appellant's own statements, that he believed his daughters were telling the truth, and his testimony regarding the incidents for which the jury convicted him, I would conclude that the error in admitting Cardinale's testimony was harmless. The facts of this case are unique, however, because appellant's own statements sup-

port his convictions and he vouched for his daughters' credibility.

The problem inherent in this type of hearsay is the tendency to disregard the entirety of the rule in favor of merely incanting the phrase "for purposes of medical treatment or diagnosis." In cases relying on medical diagnosis or treatment hearsay statements, there is a very real danger that out-of-court statements will be admitted without the appropriate inquiry. I believe that is what happened here, but because the improper admission of the testimony was harmless, I would affirm appellant's convictions.

---

12. Appellant testified that he believed this act occurred when Jane was eleven.