TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00084-CR






David Lee Sanders, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT

NO. 01-1164-K368, HONORABLE BURT CARNES, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



 A jury convicted appellant David Lee Sanders and sentenced him to life in prison for 
the crime of escape and twenty years' imprisonment for unauthorized use of a vehicle. See Tex. Pen.
Code Ann. §§ 31.07, 38.06 (West 1994 & Supp. 2003). He appeals, arguing that the trial court
committed reversible error by admitting evidence of: (1) his failure to surrender after his escape; and
(2) an eighteen-year-old conviction for escape in another jurisdiction. Because the trial court acted
within its discretion, we will affirm the judgment. 


BACKGROUND

 On August 27, 2000, while appellant was serving eight years' confinement in Bartlett
State Jail for the felony offense of aggravated assault, he and another inmate used boxes and wire
cutters to jump the prison fence. In the course of their escape, appellant "hot-wired" a truck in
Bartlett, Texas. Approximately forty-eight hours later, police apprehended appellant in Montgomery
County, Texas. Appellant pleaded guilty to the count of unauthorized use of a vehicle. In response
to the charge of escape, appellant argued the defense of necessity. See Tex. Pen. Code Ann. § 9.22
(West 1994). A jury convicted appellant on both counts. Appellant claims that the trial court erred
by admitting: (1) evidence demonstrating that he did not surrender to authorities after his escape; and
(2) an eighteen-year-old prior conviction for escape in Illinois. The State responds that: (1) evidence
of appellant's failure to surrender was admissible to rebut appellant's necessity defense; and (2)
appellant opened the door to evidence of his prior escape conviction by creating a false impression
about his criminal past.


DISCUSSION

Standard of Review

 We review for a trial court's admission of evidence for an abuse of discretion. 
Angleton v. State, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998). The test is whether the court acted
arbitrarily or unreasonably, without reference to any guiding rules or principles. City of Austin v.
Janowski, 825 S.W.2d 786, 788 (Tex. App.--Austin 1992, no writ). If the ruling is within the
bounds of reasonable disagreement the trial court has not abused its discretion. Robbins v. State, 88
S.W.3d 256, 260 (Tex. Crim. App. 2002). 


Escape and the Necessity Defense

 A person commits the crime of escape if he makes an unauthorized departure from
custody when he is under arrest for, charged with, or convicted of an offense. Tex. Pen. Code Ann.
§ 38.06 (West Supp. 2003). Escape is a felony if the offense for which the prisoner was under arrest
was a felony. Id. § 38.06(c)(1). The crime being the escape itself, it is therefore complete once the
unauthorized departure is made. Fitzgerald v. State, 782 S.W.2d 876, 877 (Tex. Crim. App. 1990). 
Consequently, the nature and scope of custody, and what constitutes an unauthorized departure from
custody, depends on the facts of each case. Lawhorn v. State, 843 S.W.2d 269, 270 (Tex.
App.--Austin 1992, pet. granted).

 Section 9.22 of the penal code makes "necessity" a defense to escape. Tex. Pen. Code
Ann. § 9.22 (West 1994). If necessary to avoid imminent and serious harm, a prisoner may escape
instead of submitting to a dangerous and extreme situation. Fitzgerald, 782 S.W.2d at 884. A
defendant must show that he reasonably believed that the conduct was immediately necessary to
avoid imminent harm. Tex. Pen. Code Ann. § 9.22. Imminent harm contemplates a reaction to
circumstances in which the harm is present and immediate, not pending; there must be an emergency
situation. Smith v. State, 874 S.W.2d 269, 272-73 (Tex. App.--Houston [14th Dist.] 1994, writ
ref'd). Because society has a compelling interest in ensuring that those people considered threats
to the public remain in confinement, the necessity defense is exceptionally narrow: the harm must
be serious and the situation compelling and extreme in order to exonerate the defendant. See
Branson v. State, 525 S.W.2d 187, 188 (Tex. Crim. App. 1975) (escaping to seek legal counsel and
relief from sordid jail conditions insufficient); Acosta v. State, 660 S.W.2d 611, 614 (Tex.
App.--Corpus Christi 1983, no writ) (evidence failing to show defendant would have died or
suffered serious bodily harm insufficient); cf. People v. Lovercamp, 118 Cal. Rptr. 110, 116 (Cal.
Ct. App. 1974) (physical abuse and threats of rape insufficient); People v. Richards, 75 Cal. Rptr.
597, 604 (Cal. Ct. App. 1969) (being given a choice between submitting to rape or death insufficient
because the situation was not necessarily life threatening); State v. Cahill, 194 N.W. 191, 193-94 
(Iowa 1923) (cell that was infested with bugs, worms, and vermin insufficient); Johnson v. State, 50
S.E. 65, 65 (Ga. 1905) (leaving chain gain to avoid unmerited punishment insufficient). Unlike other
states Texas courts have held that a defendant commits the crime of escape the moment he completes
the unauthorized departure from custody and, as a result, need not surrender in order to receive a
necessity instruction. Compare Lawhorn, 898 S.W.2d at 890 (escape is not a continuing offense),
with Lovercamp, 118 Cal. Rptr. at 115 (to receive necessity instruction for escape, defendant must
immediately report to authorities upon reaching position of safety), and People v. Webster, 46 Cal.
Rptr. 699, 703 (Cal. Ct. App. 1965) (even if a prisoner escapes to save his life, a failure to surrender
constitutes a continuing offense). In sum, a defendant in Texas must show that the escape was
required due to extreme and serious circumstances involving imminent and generally life-threatening
harm, but need not surrender in order to be entitled to a necessity instruction.


Evidence Regarding Failure to Surrender

 In his first point of error, appellant argues that the trial court erred in admitting
evidence of his failure to surrender. At trial, appellant sought and received an instruction on the
defense of necessity. The trial court admitted evidence of appellant's failure to surrender for the sole
purpose of rebutting his necessity defense. The State argued that the evidence was necessary to show
that appellant's motive for escape was not necessitated by fear of imminent harm. Appellant relies
on Fitzgerald for the proposition that, because surrender is not a necessary element of the necessity
defense, no evidence of a defendant's failure to surrender is admissible. See Fitzgerald, 782 S.W.2d
at 885. 

 Appellant likens his case to Fitzgerald because there the court held evidence of the
post-escape conduct of burglary and attempted murder inadmissible to rebut a defense of necessity.
Therefore, appellant argues, all evidence of post-escape conduct is necessarily inadmissible.
Fitzgerald involved two inmates who, during the course of their escape, committed the crimes of
burglary and attempted murder. Id. at 878. The inmates argued that their escape was justified by
necessity and the trial court allowed the prosecution to introduce rebuttal testimony about the two
extraneous crimes. Id. at 877-78. The court of criminal appeals held the evidence inadmissible to
show "consciousness of guilt" or to rebut the motive element of a necessity defense. Id. at 885. 
First, the court held that "consciousness of guilt" evidence is unnecessary in escape cases because
the court can assume that a defendant who has escaped from prison intended to do so. Id. at 882. 
Consequently, evidence of flight used to "show consciousness of guilt" is irrelevant because,
regardless of his justification for the escape, no prisoner will remain outside the walls of the prison
waiting to be taken right back to the very cell from which he fled. Id. at 882. Second, the court
addressed the admission of the extraneous crimes as rebuttal evidence to the motive element of the
necessity defense. A necessity defense turns upon the defendant's motive for escape--necessity only
excuses escapes motivated by fear of imminent and serious harm. Id. at 883. Although the
Fitzgerald court recognized that the defendant's post-escape conduct might be probative of his
motive for leaving, under those facts whatever probative value such evidence had was outweighed
by its undue prejudice. Id. at 885. Fitzgerald, then, stands for the proposition that, although
testimony regarding a defendant's post-escape conduct may be relevant, evidence of some conduct
may be so prejudicial that its improper effect outweighs its probative value. Id. at 884-85.

 In the instant case, the trial court admitted testimony of post-escape conduct solely
for the purpose of rebutting the motive element of appellant's necessity defense. On cross-examination, the State sought to introduce testimony that appellant made no attempt to surrender or
contact the authorities. After hearing argument from counsel, the trial court specifically concluded
that this evidence was probative of the appellant's state of mind at the time of escape. The trial court
admitted only narrowly tailored questions demonstrating that at no time during the duration of his
escape did the appellant attempt to surrender or to contact the authorities. As we have explained,
a necessity defense turns upon the assumption that the defendant escaped to avoid imminent and
serious harm. Appellant's failure to attempt to surrender or to contact the authorities was therefore
relevant to show his state of mind at the time of escape. Because the trial court allowed only
narrowly tailored questions that were relevant to appellant's motive for escaping, and those questions
were not, in themselves, unfairly prejudicial, we cannot conclude that the trial court abused its
discretion. Appellant's first point of error is overruled.


Admission of Prior Conviction

 In his second point of error, appellant argues that evidence of his eighteen-year-old 
Illinois conviction for escape was inadmissible because it does not meet the specific requirements
of evidence rule 609. See Tex. R. Evid. 609. The trial court permitted the State to introduce the
prior conviction for impeachment purposes only because it found that appellant had "opened the
door" regarding his criminal past. 

 In general, a defendant's past crimes may not be used against him in an unrelated case
in order to prevent the accused from being tried for some collateral crime. Tex. R. Evid. 404(b); see
Montgomery v. State, 810 S.W.2d 372, 386-37 (Tex. Crim. App. 1990). However, when a defendant
takes the stand he may be impeached in the same manner as any other witness. Hammett v. State,
713 S.W.2d 102, 105 (Tex. Crim. App. 1986). Rule 609 imposes two requirements before evidence
of a prior conviction can be used to impeach a witness: (1) the prior conviction must be either a
felony or a crime involving moral turpitude; and (2) if the crime is "remote," or more than ten years
old, the court may only admit the evidence if it determines, "in the interests of justice, that the
probative value of the conviction . . . substantially outweighs its prejudicial effect." See Tex. R.
Evid. 609(a), (b); Lopez v. State, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000).

 If a witness begins an inquiry into a particular area, or paints an incomplete picture
of the issue, the State may introduce otherwise inadmissible evidence in an attempt to clarify or
complete that picture. Lopez, 990 S.W.2d at 776. Therefore, when the defendant's testimony creates
a false impression of his criminal past, he "opens the door" for opposing counsel to expose the
falsehood through otherwise inadmissible evidence. See Anaya v. State, 988 S.W.2d 823, 825 (Tex.
App.--Amarillo 1999, no pet.). In determining if a witness has opened the door, we must examine
the statements in context of the testimony as a whole. Moore v. State, 82 S.W.3d 399, 407 (Tex.
App.--Austin 2002, pet. ref'd). Evidence of a specific prior conviction admitted to clarify or
complete the picture must be related to the matter brought into issue by the witness. Turner v. State,
4. S.W.3d 74, 79 (Tex. App.--Waco 1999, no pet.). To deny opposing counsel the opportunity to
use otherwise inadmissible evidence to clarify the false impression that a witness has created by
selectively testifying as to his criminal past would allow the witness to offer misleading testimony
without fear of rebuttal. Baxter v. State, 645 S.W.2d 812, 816 (Tex. Crim. App. 1983).

 On direct examination, appellant testified that he had a "terrible criminal history." 
Appellant testified to many, but not all, of his prior convictions. His counsel then asked: "Going
back to the escape, the reason why . . . given the fact that you have this terrible criminal history, [sic]
the jury's already heard about . . . why should they believe anything you have to say?" Appellant
answered:


Any other time I've ever been arrested for anything, I've always plead guilty in open
court for whatever the range of punishment was and the Judge felt. That's what I got
. . . The only time I've ever been in a jury trial . . . is the last two days . . . because
I left for a reason. I was in fear of my life. The situation I was in . . . I've never seen
so much criminal activity. . . . I was just trying to do my time.



 On cross-examination, the State sought to question appellant about five prior
convictions, including prior convictions for burglary and forgery, in an attempt to clarify appellant's
criminal history. All of these convictions were more than ten years old. Before admitting the
evidence, the trial court dismissed the jury and conducted a hearing to determine the admissibility
of these convictions. The court admitted only the escape conviction and gave a limiting instruction
that the prior conviction evidence could only be used to impeach.

 Appellant's testimony would have left the jury with the false impression that he had
always willingly tried to do his time and that it was only the particular conditions at the Bartlett State
Jail that had forced him to escape. Furthermore, appellant attempted to bolster this impression by
creating the false impression that his "terrible criminal history" consisted only of those crimes which
he chose to present. Viewing his testimony as a whole, appellant created a false impression that he
had habitually submitted to his punishment, but that this situation was unique and forced him to
escape. To deny the State an opportunity to clarify this false impression would permit appellant to
give misleading testimony and then hide behind rule 609. Given the fact that the trial court
conducted a hearing and gave a limiting instruction that the evidence of the prior conviction was to
be used solely for the purpose of impeaching appellant, we cannot say the trial court abused its
discretion.

 Even if the evidence were inadmissible, it was harmless. Error in the admission of
evidence is subject to a harm analysis. Moore, 82 S.W.3d at 405. To assess the harm caused by an
improper admission of evidence, an appellate court must determine how the admission of the
evidence affected the jury's verdict. Roethel v. State, 80 S.W.3d 276, 282 (Tex. App.--Austin 2002,
no pet.). If the admission of the evidence did not affect the jury's decision, that decision should not
be disturbed. Moore, 82 S.W.3d at 405. In this case, the appellant had already testified on direct
examination that he had previously escaped from a prison in Georgia. Thus, the admission of the
Illinois escape conviction, even if inadmissible, was merely cumulative and consequently harmless. 
Appellant's second point of error is overruled.


CONCLUSION

 Having overruled both points of error, we affirm the trial court's judgment.



 

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: March 13, 2003

Do Not Publish